# IN THE SUPREME COURT OF TENNESSEE

## AT KNOXVILLE

FILED

November 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| NAPOLEON MOMON, **PUBLICATION** | ) | **FOR** |
| | ) | |
| Appellant, | ) | **FILED: November 15, 1999** |
| | ) | |
| v. | ) | HAMILTON CRIMINAL |
| | ) | |
| STATE OF TENNESSEE, | ) | HON. STEPHEN M. BEVIL, JUDGE |
| | ) | |
| Appellee. | ) | No. E1996-00007-SC-R11-PC |
| | ) | |
| | ) | (Post Conviction) |

For the Appellant:
Stephen M. Goldstein
Chattanooga, Tennessee

For the Appellee:
Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Daryl J. Brand
Associate Solicitor General
Nashville, Tennessee

William H. Cox, III
District Attorney General
11th Judicial District

Rodney C. Strong
Assistant District Attorney
Chattanooga, Tennessee

## OPINION

TRIAL COURT AND COURT OF
CRIMINAL APPEALS REVERSED
CASE REMANDED TO TRIAL COURT.

DROWOTA, J.

The appellant, Napoleon Momon, requested permission to appeal from a decision of the Court of Criminal Appeals holding that he was not denied effective assistance of counsel when his trial counsel failed to allow him to testify at his own trial. After careful consideration, we find it unnecessary to reach the issue of whether the facts of this case give rise to a claim of ineffective assistance of counsel. Instead we hold that a criminal defendant's right to testify is a fundamental constitutional right guaranteed both by Article I, section 9 of the Tennessee Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution. As such, the right must be personally waived by the criminal defendant. In all cases tried or retried hereafter, trial courts should adhere to the procedural guidelines set forth herein to ensure that the defendant personally waives his or her right to testify. The appellant in this case was denied his fundamental right to testify when trial counsel unilaterally waived the right. Although the harmless error doctrine may be applied to a violation of the fundamental right to testify, the record on appeal before this Court has not been sufficiently developed to permit a determination of whether or not the error in this case is harmless beyond a reasonable doubt. Accordingly, we remand this case to the trial court for a hearing at which the State will bear the burden of demonstrating that the error was harmless beyond a reasonable doubt. If, however, the State fails to meet its burden, the trial court must vacate the appellant's conviction.

**BACKGROUND**

The appellant, Napoleon Momon, was indicted for first degree murder in the shooting death of his wife. During his first trial on June 5, 1991, the appellant testified in his own behalf to the effect that the shooting was accidental and occurred during the course of a close struggle between him and his wife during an argument. The State presented evidence showing that the shooting was in fact not accidental since the absence of gunshot particles and residue around the wound indicated that the bullet had been fired from a distance of two or more feet. No one else was present at the time of the shooting other than the appellant and his wife. Based on this evidence,

the jury returned a verdict of not guilty on the charge of first degree murder, but it was unable to reach a verdict on the lesser included offense of second degree murder.

The appellant was retried on the second degree murder charge on October 3, 1991. The State apparently presented the same witnesses as it had in the first trial,[1] but during the second trial, the defense rested without putting on any proof. Although the appellant had testified in his own behalf in the first trial, defense counsel decided that the appellant did not make a good witness, and counsel elected on his own not to have the appellant testify. The jury found the appellant guilty of second degree murder, and the trial court sentenced him, as a Range I offender, to serve twenty-five years in the Department of Correction. His conviction was affirmed by the Court of Criminal Appeals on direct appeal, and no appeal was taken to this court.

On August 17, 1995, the appellant filed a pro se petition for post-conviction relief alleging that he was denied effective assistance of counsel during his second trial. Both the appellant and his trial counsel testified at the post-conviction evidentiary hearing. The appellant testified that at the second trial, he and his counsel did not discuss either his right to testify or whether he should testify. Also, both the appellant and his counsel testified that counsel alone made the decision not to call the appellant as a witness, and counsel at no time consulted with the appellant in the decision. Counsel testified that he merely informed the appellant's son of the decision as they were entering the courtroom, and that his statements were intended "just more or less [for] passing on information" rather than for rendering any advice. The appellant is a paraplegic confined to a wheelchair, blind in one eye, and deaf. Because of these disabilities, his son acted as an interpreter for him throughout the proceedings and also acted as an intermediary between the appellant and his lawyer. Counsel's decision not to have the appellant testify was based on discussions that he had with

---

[1] The appellant contends that the State presented the same witnesses at the second trial as were presented at the first trial; however, the record of the first trial is not a part of the record on appeal in this case.

-3-

two jurors after the first trial, who told him that they did not believe the appellant's testimony.

In its findings of fact, the trial court found that appellant's counsel made a unilateral decision not to call the appellant to the stand. However, the trial court determined that counsel's decision was one of trial strategy and therefore did not constitute ineffective assistance of counsel. On that basis, the trial court dismissed the petition.

On appeal, a majority of the Court of Criminal Appeals affirmed the decision of the trial court denying the appellant post-conviction relief. Although the intermediate court determined that the performance of the appellant's counsel was deficient and below an objective standard of reasonableness, the court concluded that the appellant failed to meet his burden of proving that counsel's performance was so serious as to call into question the outcome of the trial. The appellant now requests this Court to reverse the decision of the intermediate court finding that the appellant was not prejudiced by the deficient performance of his counsel, even though his counsel was ineffective and denied him a fundamental constitutional right.

## STANDARD OF REVIEW

To sustain his post-conviction petition, the appellant must prove his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). Upon review, this Court will not reweigh or reevaluate the evidence. We give deference to questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence as they are resolved by the trial court. State v. Henley, 960 S.W.2d 572, 578 (Tenn. 1997). Furthermore, the findings of fact of the trial judge on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence in the record preponderates against those findings. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn.

1996); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

## ANALYSIS

The appellant contends that the Court of Criminal Appeals erred in affirming the trial court's denial of post-conviction relief.  He argues specifically that he was denied the effective assistance of counsel when his counsel interfered with his constitutional right to testify.  In our analysis of this case, however, we need not reach the Sixth Amendment issue of whether the appellant's counsel was ineffective in failing to advise and consult his client concerning his client's right to testify at the second trial. We conclude that the appellant has been plainly denied his right to testify in his own behalf which is guaranteed by Article I, section 9 of the Tennessee Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

While this Court will not ordinarily consider issues that are not raised by the parties, "[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." State v. Manning, 500 S.W.2d 913, 914 (Tenn. 1973) (citation omitted); see also State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984); Tenn. R. Crim. P. 52(b); Tenn. R. App. P. 13(b).  That the appellant was denied an opportunity to testify in his own behalf is plain and obvious, and we elect to address this issue to protect the appellant's constitutional rights and to prevent manifest injustice.  See Tenn. R. Crim. P. 52(b).

## RIGHT TO TESTIFY

It is now a well established principle in both state and federal law that a criminal defendant has a constitutional right to testify at trial. See State v. Burkhart, 541

-5-

S.W.2d 365, 371 (Tenn. 1976); Campbell v. State, 469 S.W.2d 506, 509 (Tenn. Crim. App. 1971); see also Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); Harris v. New York, 401 U.S. 222, 225 (1971). At common law, criminal defendants did not enjoy the right to testify in part because it was believed that a defendant's interest in the trial made such testimony unreliable.[2] Although defendants were not allowed to be sworn as witnesses, the common law did permit a criminal defendant in a jury trial to plead his or her cause before the jury in an unsworn statement, and the defendant was often even expected to make an exculpatory statement before the court. See Reed Harvey, Waiver of the Criminal Defendant's Right to Testify: Constitutional Implications, 60 Fordham L. Rev. 175, 177-78 & n.25 (1991).

The right of a criminal defendant to speak in his or her own behalf is so important in Tennessee that the right has been constitutionally guaranteed since 1796 beginning with this state's first Constitution. See Tenn. Const. art. XI, § IX (1796) (stating "[t]hat in all criminal prosecutions, the accused hath a right to be heard by himself and his counsel"). By including this provision, the framers of the 1796 Constitution meant to "insure that every accused citizen enjoyed the benefit of counsel [a]nd a correlative right to be heard in person." Burkhart, 541 S.W.2d at 371. Although this provision was left unchanged during the constitutional revision of 1834, see Tenn. Const. art. I, § IX (1835), it was altered in the 1870 Constitution to make clear that a criminal defendant has "the right to be heard by himself," see Tenn. Const. art. I, § 9 (1870) (emphasis added).

As originally interpreted, however, Article I, section 9 did not guarantee a criminal defendant the right to testify. In Wilson v. State, 3 Heiskell 198, 50 Tenn. 232 (1871), this Court stated that Article I, section 9 "certainly [does] not mean that [the defendant] may become a sworn witness on his own behalf." Id. at 203, 50 Tenn. at

---

[2]See State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994). For more discussion on the general history of a defendant's right to testify, see Note, Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify, 3 Hastings Const. L.Q. 517, 519-29 (1976).

-6-

238. The rationale for this disqualification did not stem from the belief that the defendant would be less than truthful due to his interest in the litigation or from the belief that the defendant did not have a fundamental right to explain his version of events. On the contrary, the disqualification was grounded in the belief that since a testifying defendant would be subject to cross-examination, this procedure would violate a later provision in Article I, section 9 which "forbids that [the defendant] be compelled to testify against himself." Id. Despite the rationale, the Wilson Court believed that the trial court committed reversible error when the defendant was not allowed to make a statement before the jury. As the Court stated:

> An innocent person is sometimes entangled in a web of suspicion by a curious combination of facts, which no one else can explain but himself. . . . He alone may be able by a simple explanation of circumstances[,] which now seem inexplicable otherwise than upon assumption of guilt, or by putting this and that fact together, to remove every shadow of suspicion from himself.

Id. at 206, 50 Tenn. at 241. "In other words, the Constitution guarantees to every prisoner the right to explain the case made against him, in his own way." Id. at 207, 50 Tenn. at 242.

Changes in Tennessee criminal procedure have also brought changes in the interpretation of Article 1, section 9. At the time of Wilson, a criminal defendant was allowed to make unsworn statements before a jury because the defendant was presumed to be incompetent as a witness. In 1887, the General Assembly enacted Code section 9782 which stated: "In the trial of all indictments, presentments, and other criminal proceedings, the party defendant thereto may, at this own request, but not otherwise, be a competent witness to testify therein." The enactment of this statute rendered the Wilson approach a nullity because the defendant could now take the stand to testify in his or her own behalf.

-7-

In State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976), this Court again had occasion to interpret Article I, section 9 of our constitution. In Burkhart, the issue was whether a criminal defendant, who was represented by counsel, still had the right to make his own argument before the jury. This Court found that although a defendant no longer has a right to present an unsworn statement before the jury, "[i]n Tennessee today a criminal defendant continues to have essentially the same rights. The only difference is that criminal trial procedure has been refined and in the process the defendant has gained the right to be a sworn witness testifying in his own behalf." Burkhart, 541 S.W.2d at 371. The Court interpreted Article I, section 9 to mean that "[i]n all criminal prosecutions the accused *has the right to testify as a witness in his own behalf* and to be represented by counsel." 541 S.W.2d at 371 (emphasis added).[3] Although the General Assembly has recently repealed the successor to Code section 9782, see Pub. Acts 1991, ch. 273, § 32 (repealing Tenn. Code Ann. § 40-17-102), our Tennessee Rules of Evidence clearly indicate that a criminal defendant is competent to testify. See Tenn. R. Evid. 601.

Under federal law, the right of a criminal defendant to testify is not mentioned specifically in the text of the United States Constitution. Nevertheless, the right has been recognized as an integral component of due process as guaranteed by the Fifth and Fourteenth Amendments. The Supreme Court began signaling that the right of a criminal defendant to be heard enjoyed constitutional status as early as 1876 when the court stated that "a sentence of a court pronounced against a party without hearing him, or giving him the opportunity to be heard, is not a judicial determination of

---

[3]The Court of Criminal Appeals has also recognized that a defendant may testify as a matter of constitutional right. See, e.g., State v. Frazier, 683 S.W.2d 346, 353 (Tenn. Crim. App. 1984) (stating that "[i]n Tennessee, a person accused of a crime is constitutionally entitled to testify in his own behalf"); Campbell, 469 S.W.2d at 509 (stating that "[w]hile it is true that no person accused of crime may be compelled to testify at his trial, he may do so if he so chooses").

his rights, and is not entitled to respect in any other tribunal." See Windsor v. McVeigh, 93 U.S. 274, 277 (1876).[4]

In 1961, the United States Supreme Court struck down a Georgia statute that limited a defendant's ability to present evidence through an unsworn statement at trial. See Ferguson v. Georgia, 365 U.S. 570 (1961). Although the Court did not reach the question of whether a defendant had a constitutional right to testify, the Court emphasized that "decades ago the considered consensus of the English-speaking world came to be that there was not rational justification for prohibiting the sworn testimony of the accused, who above all may be in a position to meet the prosecutions case." Id. at 582. After Ferguson, the Court next hinted that a constitutional foundation supported the right to testify in Harris v. New York, 401 U.S. 222, 225 (1971), when it stated that "[e]very criminal defendant is privileged to testify in his own defense or refuse to do so." See also Brooks v. Tennessee, 406 U.S. 605, 612 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right.").

In Rock v. Arkansas, 483 U.S. 44 (1987), the United States Supreme Court expressly recognized the constitutional basis of the right to testify, and declared that the right "is one of the rights that 'are essential to due process of law in a fair adversary process.'" Id. at 501 (quoting Faretta v. California, 422 U.S. 806, 819 n.15 (1975)). The Court found that this right is derived from several constitutional provisions, including the due process clause of the Fourteenth Amendment,[6] the

---

[4]Although the Windsor Court did not classify the right to be heard as a right guaranteed by due process, twenty years later, the Court in Hovey v. Elliott, 167 U.S. 409, 415-17 (1897), asked rhetorically, "[a]t common law no man was condemned without being afforded an opportunity to be heard. . . . Can it be doubted that due process of law signifies a right to be heard in one's defense?"

[6]Rock, 483 U.S. at 51."The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . ." Id.

compulsory process clause of the Sixth Amendment,[7] the Sixth Amendment right to self-representation,[8] and as a corollary to the Fifth Amendment privilege against self-incrimination.[9] Although the <u>Rock</u> Court did not specifically hold that the right to testify is a fundamental constitutional right, it acknowledged that "[o]n numerous occasions the Court has proceeded on the premise that the right to testify on one's own behalf in defense to a criminal charge is a fundamental right." <u>See</u> 483 U.S. at 51 n.10. Based upon this language, coupled with prior Supreme Court precedent, most federal courts have concluded that the right to testify is indeed a fundamental constitutional right.[10]

---

[7]<u>Id.</u> at 52. "Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,' is a right to testify himself, should he decide it is in his favor to do so." <u>Id.</u> (citations omitted).

[8]<u>Id.</u> "Even more fundamental to a personal defense than the right of self-representation . . . is an accused's right to present his own version of the events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." <u>Id.</u>

[9]<u>Id.</u> "Every criminal defendant is privileged to testify in his own defense, or refuse to do so. . . . '[The Fifth Amendment's privilege against self-incrimination] is fulfilled only when an accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will -. -. -. -.'" <u>Id.</u> at 53, 107 S. Ct. at 2710 (citations omitted) (alteration in original).

[10]<u>See, e.g.</u>, <u>United States v. Boyd</u>, 86 F.3d 719, 723 (7th Cir. 1996) (characterizing the right as a "fundamental choice"); <u>United States v. Ortiz</u>, 82 F.3d 1066, 1070 (D.C. Cir. 1996) ("We, like our sister circuits and the state courts, have no doubt that a criminal defendant has a fundamental constitutional right to testify that is personal to the defendant and cannot be waived by counsel or the court."); <u>United States v. Pennycooke</u>, 65 F.3d 9, 10 (3d Cir. 1995) ("This right is personal and thus only the defendant may waive it."); <u>Jordan v. Hargett</u>, 34 F.3d 310, 312 (5th Cir. 1994) ("A criminal defendant has a fundamental constitutional right to testify on his own behalf."); <u>Foster v. Delo</u>, 11 F.3d 1451, 1457 (8th Cir. 1994) (en banc) ("A criminal defendant's right to put on a defense, including the right to testify in one's own behalf, is a fundamental constitutional guarantee that can only be waived by the defendant himself."); <u>United States v. Joelson</u>, 7 F.3d 174, 177 (9th Cir. 1993) ("An accused's right to testify is a constitutional right of fundamental dimension."); <u>United States v. Teague</u>, 953 F.2d 1525, 1532 (11th Cir. 1992) ("We now reaffirm that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."); <u>United States v. Scott</u>, 909 F.2d 488, 490 (11th Cir. 1990) ("It is clear then that a defendant's right to testify is now a recognized fundamental right."); <u>United States v. Narducci</u>, 18 F. Supp. 2d 481, 495 (E.D. Pa. 1997) ("While the defendant may, and should, receive advice from his attorney, this fundamental right cannot be contravened by an attorney even if the defendant's decision causes strategic damage."); <u>Campos v. United States</u>, 930 F. Supp. 787, 790 (E.D.N.Y. 1996) ("The Court concurs with the analysis in the above cited precedent and concludes that the right to testify is a fundamental constitutional right, personal to the defendant that cannot be waived by counsel."); <u>Porter v. Singletary</u>, 883 F. Supp. 660, 666 (M.D. Fla. 1995) (acknowledging the Eleventh Circuits's recognition of the right to testify as fundamental); <u>Deluca v. Lord</u>, 858 F. Supp. 1330, 1354 (S.D.N.Y. 1994) ("This Court finds that <u>Rock</u>, especially when read in light of the Supreme Court's earlier precedent, supports the contention that the right to testify is indeed fundamental in character."); <u>Smith v. Campbell</u>, 781 F. Supp. 521, 530 (M.D. Tenn. 1991) ("The right of a defendant to take the stand is fundamental and may only be waived by the defendant himself."), <u>aff'd by mem.</u>, 961 F.2d 1578 (6th Cir. 1992).

In addition, virtually all of our sister states addressing the issue have also either held or stated that the right to testify is a fundamental right.[11]

While no prior Tennessee case has expressly held that the right of a criminal defendant to testify is a fundamental right, it is beyond serious dispute that the right has achieved fundamental status both under the state and federal constitutions. The right of criminal defendants to be heard in their own defense is guaranteed in

---

[11]See, e.g., LaVigne v. State, 812 P.2d 217, 219 (Alaska 1991) ("The constitutional right to testify is both personal to the criminal defendant and fundamental to the dignity and fairness of the judicial process."); State v. Gulbrandson, 906 P.2d 579, 597 (Ariz. 1995) ("The United States Supreme Court has held that a defendant has a fundamental right, guaranteed under the Constitution, to testify."); People v. Robles, 466 P.2d 710, 716 (Cal. 1970) ("We are satisfied that the right to testify in one's own behalf is of such fundamental importance that a defendant who timely demands to take the stand contrary to the advice given by his counsel has the right to give an exposition of his defense before a jury."); People v. Curtis, 681 P.2d 504, 512 (Colo. 1984) ("Moreover, we are persuaded for several independent reasons that the right to testify is so fundamental that these [procedural] safeguards [established by Johnson v. Zerbst] are necessary."); Boyd v. United States, 586 A.2d 670, 674 (D.C. 1991) ("Accordingly, we hold that the defendant's right to testify in a criminal trial is a fundamental and personal right which can only be waived by the defendant."); State v. Raydo, 713 So. 2d 996, 998 (Fla. 1998) ("A defendant's right to testify is a fundamental right under the state and federal constitutions."); Boone v. State, 481 S.E.2d 569, 572 (Ga. Ct. App. 1997) ("A criminal defendant has a fundamental right to testify."); Tachibana v. State, 900 P.2d 1293, 1299 (Haw. 1995); State v. Hoffman, 778 P.2d 811, 812 (Idaho Ct. App. 1989) ("We begin our analysis by noting that every criminal defendant has a fundamental right to testify on his or her own behalf."); People v. Madej, 685 N.E.2d 908, 923 (Ill. 1997) ("A defendant's right to testify at trial is a fundamental constitutional right, as is his or her right to choose not to testify."); Passamichali v. State, 569 A.2d 733, 738 (Md. Ct. Spec. App. 1990) ("The right of a criminal defendant to take the witness stand and testify in his own defense is fundamental, and its existence cannot be doubted."); Commonwealth v. Freeman, 564 N.E.2d 11, 14 (Mass. App. Ct. 1990) ("A criminal defendant has a fundamental right to testify on his own behalf."); State v. Young, 882 S.W.2d 291, 293 (Mo. Ct. App. 1994) ("Defendant's right to testify in his own behalf is a fundamental constitutional right, waivable only by himself."); Ingle v. State, 546 P.2d 598, 599 (Nev. 1976) ("We are satisfied that the right to testify in one's own behalf is of such fundamental importance that a defendant who timely demands to take the stand contrary to the advice given by his counsel has the right to give an exposition of his defense before a jury."); State v. Savage, 577 A.2d 455, 472 (N.J. 1990) ("In our view, the right to testify is essential to our state-based concept of due process of law, which guarantees a 'fair and impartial trial in which there is a legitimate and decorous recognition of the substantive rights of the defendant.'") (citation omitted); State v. Bey, 709 N.E.2d 484, 497 (Ohio 1999) ("Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused."); Perez v. State, 960 S.W.2d 84, 88 (Tex. Ct. App. 1997) ("[T]he right to testify is a fundamental constitutional right designed to guarantee a fair trial . . . ."); State v. Brooks, 833 P.2d 362, 364 (Utah Ct. App. 1992) ("The right of criminal defendants to testify and present their version of events in their own words is fundamental. This fundamental right is guaranteed by both the United States Constitution and the Utah Constitution.") (citation omitted); State v. Mumley, 571 A.2d 44, 45 (Vt. 1989) ("Criminal defendants have a fundamental right to testify in their own defense, under both the federal and state constitutions."); State v. Thomas, 910 P.2d 475, 478 (Wash. 1996) ("The right to testify in one's own behalf has been characterized as a personal right of 'fundamental' dimensions."); State v. Neuman, 371 S.E.2d 77, 81 (W. Va. 1988) ("[T]he decision to testify in one's own behalf, like the right to determine what plea to enter, the right to a jury trial, the right to counsel, and the right to be present at trial, is so fundamental that procedural safeguards must be employed on the record to insure that the defendant's waiver of the right to testify was made voluntarily, knowingly, and intelligently."); State v. Wilson, 508 N.W.2d 44, 48 (Wis. 1993) ("Thus, in direct contrast with Albright, the United States Supreme Court has clearly indicated that the constitutional right to testify should be treated as fundamental in nature."); Herdt v. State, 891 P.2d 793, 797 (Wyo. 1995) ("Criminal defendants have a right to testify on their own behalf . . . . We have also acknowledged that a defendant's right to testify on his own behalf is a fundamental right.") (citations omitted).

Tennessee by the state and federal Constitutions, by statute,[12] by over a century of prior case law, and by current practice. We have no reservation, therefore, in holding that the right of a criminal defendant to testify in his or her own behalf is a fundamental constitutional right.

Since the right to testify at one's own trial is a fundamental right, it follows that the right may only be waived personally by the defendant. See Jones v. Barnes, 463 U.S. 745, 751 (1983) (stating that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); Vermilye v. State, 754 S.W.2d 82, 88 (Tenn. Crim. App. 1987) ("The decision as to whether an accused should testify at trial rests with the accused, not defense counsel."); cf. State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998) ("Due to our long-standing presumption against waiver of fundamental constitutional rights, these rights must be personally waived by a defendant.").[13] Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating "an intentional relinquishment or abandonment of a known right or privilege." see Johnson v. Zerbst, 304 U.S. 458, 464 (1938). The waiver of a fundamental right will not be presumed from a silent record, see State v. Muse, 967 S.W.2d 764, 767 (Tenn. 1998); House v. State, 911 S.W.2d 705, 715 n.20 (Tenn. 1995), and the courts should indulge every reasonable presumption against the waiver of a fundamental right. State ex rel. Barnes v. Henderson, 423 S.W.2d 479, 502, 220 Tenn. 719, 730 (Tenn. 1968). To ensure that defense attorneys in future criminal cases do not unilaterally

---

[12]Although the General Assembly repealed Tennessee Code Annotated section 40-17-102, the legislature has continued to recognize that a defendant has a right to be heard in his or her own defense. See Tenn. Code Ann. § 40-14-101 (1998) ("In all criminal prosecutions, the accused is entitled to a speedy trial, and to be heard in person and by counsel.").

[13]Although we do not address the question of ineffective assistance of counsel, it should be emphasized that trial tactics and strategy do not afford to defense counsel the authority to unilaterally waive a criminal defendant's right to testify. While it is true that a defendant's decision whether to testify is fraught with tactical and strategic implications, the decision as to whether to exercise the right to testify is one which can only be made by the criminal defendant, and counsel can not unilaterally waive this right, even when counsel strongly believes the exercise of the right is not in the best interests of the criminal defendant.

-12-

deprive criminal defendants of the fundamental right to testify, in every trial where the defendant does not testify, the trial court should allow, and indeed require, defense counsel to employ the following procedure.

At any time before conclusion of the proof, defense counsel shall request a hearing, out of the presence of the jury, to inquire of the defendant whether the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify. This hearing shall be placed on the record and shall be in the presence of the trial judge. Defense counsel is not required to engage in any particular litany, but counsel must show at a minimum that the defendant knows and understands that:

> (1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;
>
> (2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;
>
> (3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

Defense counsel is generally in the best position to voir dire the defendant concerning a wavier of the right to testify, and the hearing outlined above will avoid any possible perceived pitfalls of mandating direct questioning by the trial court itself. Since the right to testify is the mirror image of the right to remain silent, there is an inherent risk that a trial judge participating in the questioning may cast an unflattering light on the right not to testify. See Commonwealth v. Hennessey, 502 N.E.2d 943, 947 (Mass. App. Ct. 1987). Under normal circumstances, therefore, the trial judge should play no role in this procedure, unless the judge believes there is evidence that the defendant is not making a valid waiver of the right to testify. In such a case, the trial judge is obliged to question the defendant directly to the extent necessary to ensure a valid waiver.

The approach outlined above strikes the proper balance between the preservation of a fundamental right and the need to protect the relationship and confidences between defense counsel and his or her client. It seeks to minimize judicial interference with the attorney-client relationship while ensuring that defendants know and understand that they have a fundamental right to testify in their own behalf. This approach also facilitates appellate review by having a clear waiver of the right to testify present on the record of the trial.

We emphasize, however, that neither the right to testify discussed herein, nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively applied. A constitutional rule is considered "new" when the rule amounts to a "clear break" with past precedents. See State v. Enochs, 823 S.W.2d 539, 540 (Tenn. 1991). A rule that merely restates or reemphasizes pre-existing state law is not one that is "new." See State v. Prince, 781 S.W.2d 846, 850 (Tenn. 1989). It follows that the right of a criminal defendant to testify in his or her own behalf is not new. As previously stated, this right has long been recognized by statute, case law, and constitutional provision. This decision simply clarifies and reiterates that the right is fundamental and must be personally waived by the defendant. The procedural protections set forth in this decision are designed to ensure that any waiver of the right is personally made by the defendant. The procedures are prophylactic measures which are not themselves constitutionally required. As such, the procedures adopted herein do not establish a new constitutional rule which must be retroactively applied. Trial courts should adhere to these procedural guidelines in all cases tried or retried after the date of this decision. However, the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant. Compare Johnson v. State, 834 S.W.2d 922, 924 (Tenn. 1992) (discussing advice

procedures relevant to entry of guilty pleas and stating that "it is the result [a knowing and voluntary plea] not the process that is essential to a valid plea").

In this case, it is apparent from the record that the appellant did not personally waive the right to testify. In fact, the record is clear that appellant's counsel unilaterally decided not to call the appellant as a witness to the stand at the second trial. Counsel neither advised the appellant of his right to testify nor discussed with the appellant the advantages and disadvantages of testifying or refraining from testifying. Rather, counsel merely informed the appellant of his decision as they were entering the courtroom. Under these circumstances and given his disabilities, the appellant had little time or opportunity to question the decision of his counsel. Because the right to testify is fundamental and personal to the accused, counsel did not have the authority to unilaterally decide the issue on the appellant's behalf. Under these circumstances, it is clear that the appellant was denied his fundamental right to testify which is guaranteed by both the state and federal constitutions. Having determined that the appellant's right to testify was violated in this case, we must next determine whether the error is subject to the harmless error doctrine.

**HARMLESS ERROR DOCTRINE**

Prior to 1967, neither Tennessee nor federal courts applied the harmless error doctrine to constitutional violations. See State v. Williams, 977 S.W.2d 101, 104 (Tenn. 1998); Sullivan v. Louisiana, 508 U.S. 275, 278, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182 (1993); Arizona v. Fulminante, 499 U.S. 279, 306-07, 111 S. Ct. 1246, 1263, 113 L. Ed. 2d 302 (1991) ( Rehnquist, C.J.). Consequently, when a constitutional error occurred in a criminal trial, reversal was the automatic remedy. Id.

In Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), the United States Supreme Court rejected the proposition that all federal constitutional errors that occur in the course of a criminal trial require reversal. The Chapman Court held that the Fifth Amendment violation of prosecutorial comment upon the defendant's failure to testify would not require reversal of a conviction if the State could show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24, 87 S. Ct. at 828. The Chapman standard recognizes that "certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986).

Since Chapman, the Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Id. Generally, in modern jurisprudence application of the harmless error doctrine is the rule rather than the exception. See Williams, 977 S.W.2d at 105; see also Rose v. Clark, 478 U.S. 570, 579, 106 S. Ct. 3101, 3106-07, 92 L. Ed. 2d 460 (1986). Indeed, both the United States Supreme Court[14] and the

---

[14]See e.g. Neder v. United States, __ U.S. __, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (holding that harmless error analysis applies to erroneous jury instructions which direct the jury to presume an ultimate element of the offense based upon proof of certain predicate facts); Arizona v. Fulminante, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (holding that harmless error analysis applies to erroneous admission of involuntary confessions); Clemons v. Mississippi, 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990) (holding that harmless error analysis applies to unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 105 L. Ed. 2d 218 (1989) (holding that harmless error analysis applies to a jury instruction containing an erroneous conclusive presumption); Satterwhite v. Texas, 486 U.S. 249, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988) (applying harmless error analysis to the admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment right to counsel); Pope v. Illinois, 481 U.S. 497, 107 S. Ct. 1918, 95 L. Ed. 2d 439 (1987) (holding that harmless error analysis applies to a jury instruction misstating an element of the offense); Rose v. Clark, 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (holding that harmless error analysis applies to a jury instruction containing an erroneous rebuttable presumption); Crane v. Kentucky, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (holding that harmless error analysis applies to the erroneous exclusion of the defendant's testimony regarding the circumstances of his confession); Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L. Ed. 2d 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (holding that harmless error analysis applies to trial court's error in restricting the defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment); Rushen v. Spain, 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) (stating that some violations of a defendant's right to be present at trial may be subject to harmless error analysis); United States v. Hasting, 461 U.S. 499, 103 S. Ct. 1974, 76 L. Ed.2d 96 (1983) (holding that improper comment on a defendant's silence at trial in violation of the Fifth Amendment right against self-incrimination is subject to harmless error analysis); Hopper v. Evans, 456 U.S. 605, 102 S. Ct. 2049, 72 L. Ed. 2d 367 (1982) (holding that due process violation resulting from statute which improperly forbade trial court's giving of a jury instruction on a lesser included offense in a capital case was subject to harmless error analysis); Kentucky v. Whorton, 441 U.S. 786, 99 S. Ct. 2088, 60 L. Ed.2d

courts of this State[15] have applied the harmless error doctrine to a wide variety of

constitutional errors.  As the United States Supreme Court has recognized, "[t]he

common thread connecting these cases is that each involved 'trial error' – error which

occurred during the presentation of the case to the jury, and which may therefore be

quantitatively assessed in the context of other evidence presented in order to

determine whether its admission was harmless beyond a reasonable doubt."

Fulminante, 499 U.S. at 307, 111 S.Ct. at 1264.


Application of the harmless error doctrine does not signify a disrespect of the

constitutional rights which have been violated.  Rose, 478 U.S. at 577, 106 S.Ct. at

3105.  To the contrary,

> [t]he harmless error doctrine recognizes the principle that the central
> purpose of a criminal trial is to decide the factual question of the
> defendant's guilt or innocence, and promotes public respect for the
> criminal process by focusing on the underlying fairness of the trial rather
> than on the virtually inevitable presence of immaterial error.  Reversal for
> error, regardless of its effect on the judgment, encourages litigants to
> abuse the judicial process and bestirs the public to ridicule it.

640 (1979) (holding that failure to instruct the jury on the presumption of innocence is an error subject to harmless error analysis); Moore v. Illinois, 434 U.S. 220, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977) (holding that erroneous admission of identification evidence in violation of the Sixth Amendment right to counsel is subject to harmless error analysis); Brown v. United States, 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973) (holding that admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment right to counsel is subject to harmless error analysis); Milton v. Wainwright, 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972) ((holding that harmless error analysis is applies to a confession obtained in violation of Massiah v. United States, 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)); Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 419 (1970) (holding that harmless error analysis applies to erroneous admission of evidence obtained in violation of the Fourth Amendment); Coleman v. Alabama, 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970) (holding that denial of counsel at a preliminary hearing in violation of the Sixth Amendment right to counsel is subject to harmless error analysis).

[15]See e.g. State v. Valentine, 911 S.W.2d 328 (Tenn. 1995) (holding that harmless error analysis is applies to the erroneous admission of evidence seized pursuant to an invalid warrant and in violation of the Fourth Amendment); State v. Howell, 868 S.W.2d 238, 252 (Tenn. 1993) (holding that harmless error analysis applies both to the denial of a defendant's right to effective cross-examination and to a jury's consideration of an unconstitutional aggravating circumstance at the sentencing phase of a capital trial); State v. Deuter, 839 S.W.2d 391, 396 (Tenn. 1992) (holding that harmless error analysis applies to a denial of the defendant's right of confrontation); State v. Bates, 804 S.W.2d 868, 876 (Tenn. 1991) (holding that erroneous admission of a defendant's confession obtained in violation of his right to counsel is subject to harmless error analysis); State v. West, 767 S.W.2d 387, 398-99 (Tenn. 1989) (holding that Eighth Amendment error in minimizing role of the jury in a capital case is subject to harmless error analysis); State v. Coker, 746 S.W.2d 167, 170 (Tenn. 1987) (applying harmless error analysis to erroneous jury instructions that included an impermissible rebuttable presumption in violation of due process); State v. Mitchell, 593 S.W.2d 280, 285 (Tenn. 1980) (holding that harmless error analysis applies to identification proof obtained in violation of the defendant's right to counsel); State v. Transou, 928 S.W.2d 949, 960 (Tenn. Crim. App. 1996) (applying harmless error analysis to the prosecutor's comment on the defendant's failure to testify which violated the defendant's Fifth Amendment privilege against self-incrimination); State v. Thompson, 832 S.W.2d 577, 581 (Tenn. Crim. App. 1991) (applying harmless error analysis to the infringement upon the defendant's due process right to the presumption of innocence which occurred when the defendant appeared shackled in the presence of the jury).

Van Arsdall, 475 U.S. at 681, 106 S.Ct. 1436 (citations and internal quotation marks omitted); see also Howell, 868 S.W.2d at 253. The harmless error doctrine is an embodiment of the fundamental premise that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." Howell, 868 S.W.2d at 253 quoting Van Arsdall, 475 U.S. at 681, 106 S.Ct. at 1436.

Despite the strong interests that support application of the harmless error doctrine, the United States Supreme Court and this Court have consistently held that some errors defy harmless error analysis and require reversal. See e.g. Fulminante, 499 U.S. at 309, 111 S.Ct. at 1265; Rose, 478 U.S. at 577, 106 S.Ct. at 3105; Chapman, 386 U.S. at 23 n.8, 87 S.Ct. at 828 n.8; State v. Harris, 989 S.W.2d 307, 315 (Tenn. 1999). The cases in which the United States Supreme Court and this Court have refused to apply the harmless error doctrine involve errors that are "structural defects in the constitution of the trial mechanism." Fulminante, 499 U.S. at 310, 111 S.Ct. at 1265. These errors have an impact upon "[t]he entire conduct of the trial from beginning to end." Id. Stated another way, "these errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" Neder, __ U.S. at __, 119 S. Ct. at 1833 (quoting Rose, 478 U.S. at 577, 106 S. Ct. at 3101). Only a very limited class of errors have been found to be "structural," and subject to automatic reversal. See Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (complete denial of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (adjudication by a biased judge); Vasquez v. Hillery, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (racial discrimination in selection of grand jury); McKaskle v. Wiggins, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (denial of self-representation at trial); Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of public trial); Sullivan v. Louisiana, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d (1993) (defective reasonable doubt instruction); State v. Muse, 967 S.W.2d 764, 768 (Tenn. 1998) (denial of right to be present at jury selection); State v.

-18-

Benson, 973 S.W.2d 202, 207 (Tenn. 1998) (denial of right to impartial judge); State v. Bobo, 814 S.W.2d 353, 357 (Tenn. 1991) (denial of right to trial by jury).[16]

Unlike such defects as a complete deprivation of counsel or trial before a biased judge, denial of the defendant's right to testify does not in all cases render a criminal trial fundamentally unfair or call into question the reliability of the trial as a vehicle for determining guilt or innocence. Such an error involves the exclusion of testimony which is evidence that can be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Fulminante, 499 U.S. at 307, 111 S. Ct. at 1264. In some cases, "the defendant's testimony would have no impact, or even a negative impact, on the result of trial." United States v. Tavares, 100 F.3d 995, 999 (D.C. Cir. 1996), cert. denied 520 U.S. 1160, 117 S. Ct. 1344, 137 L. Ed. 2d 502 (1997); see also State v. Robinson, __ P.2d __, __ (Wash. 1999). Likewise, in some cases, denial of a defendant's right to testify may be devastating to the defense. However, under such circumstances, a reviewing court will simply conclude that the error was not harmless beyond a reasonable doubt. The fact that reversal may be required in some cases is no reason to eschew the harmless error doctrine entirely when the error involved is clearly of a trial, rather than a structural nature. Cf. Fulminante, 499 U.S. at 312, 111 S. Ct. at 1266.

As such, denial of the right to testify has been appropriately characterized as a trial error which is subject to the harmless error doctrine. Indeed, the vast majority of jurisdictions which have considered this issue have held either that the harmless error

---

[16]Contrary to the dissent's assertion, the analysis in this opinion clearly explains why denial of the right to self-representation is not subject to the harmless error doctrine while denial of the right to testify is subject to the harmless error doctrine. Despite unsupported statements in the dissent, the right of self-representation is not a "lesser right." Instead, it is a right which is co-equal to the right to testify. However, denial of the right to self representation impacts "[t]he entire conduct of the trial from beginning to end," and therefore is not subject to harmless error analysis. Fulminante, 499 U.S. at 310, 111 S. Ct. at 1265. We reject the assertion of the dissent that courts should somehow rank constitutional rights as more or less fundamental in determining whether harmless error analysis should apply. Whether a constitutional right is fundamental relates only to whether the defendant must personally waive the right. The fact that a right must be personally waived by a defendant is not relevant to the determination of whether or not the harmless error doctrine applies. Instead, the impact of the error upon the trial mechanism must be considered in determining whether the harmless error doctrine applies.

doctrine applies when a defendant establishes a denial of the right to testify under the Fifth Amendment or that the prejudice prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) must be established if the defendant is to prove ineffective assistance of counsel as a result of counsel's unilateral waiver of the right to testify.[17]  See e.g. Tavares, 100 F.3d at 999 (citing other federal cases); Commissioner of Correction v. Rodriquez, 610 A.2d 631, 636 n.9 (Conn. 1992); People v Johnson, 72 Cal.Rptr.2d 805, 820 (Cal. App. 4 Dist. 1998); State v. Silva, 890 P.2d 702, 712 (Hawai'i 1995) (overruled on other grounds in Tachibana v. State, 900 P.2d1293, 1302-03 (Hawai'i 1995); People v. Solomon, 560 N.W.2d 651, 654-56 (Mich. Ct. App. 1996); State v. Paulsen, 726 A.2d 902, 907 (N.H. 1999); State v. Arguelles, 921 P.2d 439, 441 (Utah 1996); Robinson, __ P.2d at __; State v. Flynn, 527 N.W.2d 343 (Wis. App. 1994).[18]  Application of the harmless error doctrine to the denial of a criminal defendant's right to testify strikes the appropriate balance between the judicial system's interest in obtaining reliable results and the system's competing interest in having litigation end at some point.[19]  Van Arsdall, 475 U.S. at 681, 106 S.Ct. 1436; Chapman, 386 U.S. at 22, 87 S.Ct. at 827.

---

[17]As the dissenting opinion points out, the analysis is slightly different under the Sixth Amendment than the Fifth Amendment.  The primary difference is that under the Sixth Amendment the burden is on the petitioner to prove prejudice from counsel's action in unilaterally depriving a defendant of the right to testify.  Under the Fifth Amendment, the burden is on the State to prove that the deprivation was harmless beyond a reasonable doubt.  Given the importance of the right to testify in Tennessee, we deem it more appropriate to place the burden on the State to prove the deprivation harmless. However, a rule of presumed prejudice under the Sixth Amendment has the same practical effect as holding that denial of the right to testify under the Fifth Amendment defies harmless error analysis. Accordingly, contrary to the dissent's assertion, our reliance on cases which have analyzed this issue under the Sixth Amendment and rejected a rule of presumed prejudice is clearly appropriate.

[18]The dissenting opinion criticizes the precedent upon which we rely in holding that the harmless error doctrine applies to denials of the right to testify.  Interestingly, however, the dissent cites no authority in support of the rule it advocates. The rule of automatic reversal which the dissent would adopt was adopted by the Maine federal district court in United States v. Butts, 630 F. Supp. 1145, 1148 (D.Me. 1986). However, this decision has not been followed by other federal courts. Indeed, only one other jurisdiction in the United States appears to apply a similar rule. State v. Rosillo, 281 N.W.2d 877, 879 (Minn. 1979).

[19]The dissenting opinion states that the harmless error doctrine "amounts to no more protection than one could expect from a paper tiger, and this fundamental right deserves the protection of automatic reversal."  This statement is representative of the dissent's fundamental misunderstanding of the harmless error doctrine.  The harmless error doctrine is not a protection.  Indeed, the harmless error doctrine becomes relevant only after a right has been violated.  The procedural guidelines set forth herein are designed to protect the fundamental right to testify.

-20-

Once a constitutional error has been established, as in this case, the burden is upon the State to prove that the constitutional right violation is harmless beyond a reasonable doubt. Harris, 989 S.W.2d at 314. "Harmless error review looks . . . to the basis on which the jury actually rested its verdict." Sullivan, 508 U.S. at 279, 113 S.Ct. at 2081. However, courts often identify certain factors to aid in discerning the actual basis on which a jury rested its verdict. For example, in Howell, this Court stated that a reviewing court determining whether the denial of effective cross-examination is harmless beyond a reasonable doubt should consider the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. See Howell, 868 S.W.2d at 253 (citing Van Arsdall, 475 U.S. at 684-85, 106 S.Ct. at 1438).

Denial of a defendant's right to testify is analogous to denial of a defendant's right to effective cross-examination. In both instances, the defendant is being deprived of the right to present evidence to the jury. While not entirely relevant by their terms in the context of a denial of the right to testify, the factors identified in Howell are indicative of the concerns that arise under harmless error review when evidence has been erroneously excluded. Therefore, courts should consider the following factors when determining whether the denial of the right to testify is harmless beyond a reasonable doubt: (1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; (4) the overall strength of the prosecution's case. As previously stated, the goal of harmless error analysis is to identify the actual basis on which the jury rested its verdict. Sullivan, 508 U.S. at 279, 113 S. Ct. at 2081. Accordingly, the factors identified herein are merely instructive and not exclusive considerations.[20]

---

[20]Contrary to the dissent's assertion, we are not limiting review under the harmless error doctrine to only these four factors.

Complete consideration of these factors is not possible in this Court because the record on appeal does not contain Momon's testimony from his first trial nor does it contain an offer of proof indicating the substance of the testimony Momon would have offered at his second trial if he had not been denied the right to testify. In the trial court, Momon was attempting to establish a Sixth Amendment claim of ineffective assistance of counsel, and the State was attempting to meet that claim. The record is simply not sufficient for this Court to evaluate whether the denial of the appellant's constitutional right to testify was harmless beyond a reasonable doubt. Therefore, we conclude that this case must be remanded to the trial court for a hearing at which the State will bear the burden of establishing that the denial of the appellant's constitutional right to testify was harmless beyond a reasonable doubt. Compare State v. Phipps, 959 S.W.2d 538 (Tenn. 1997) (remanding to the trial court for a hearing at which the State would bear the burden of rebutting the presumption of vindictiveness); McKeldin v. State, 516 S.W.2d 82 (Tenn. 1974) (remanding for a determination of whether the denial of counsel at preliminary hearing constituted harmless error). We are confident that the trial judge will carefully consider the record developed at the hearing on remand in light of the factors identified herein as relevant to the determination of whether the error was harmless beyond a reasonable doubt. If the trial court concludes that the State has met its burden of establishing that the error was harmless, the appellant's conviction should be sustained. However, if the trial court concludes that the State failed to prove that the error was harmless beyond a reasonable doubt, the trial court must vacate the appellant's conviction.[21]

---

[21]The dissenting opinion's assertion that the harmfulness of the error in this case can be judged only because the court has the benefit of comparing the result of the first trial, at which the defendant testified, to the result of the second trial, at which the defendant did not testify. We reject this assertion. The task of the trial court is not to compare the result of the two trials. The task of the trial court is to consider the testimony that the defendant would have given and the proof which was actually offered at the second trial in light of the factors delineated herein and any other factors that are relevant to the determination. Apparently, the dissent fails to recognize that the appellant is entitled at the hearing on remand to make an offer of what his testimony would have been at the second trial had he not been deprived of the right to testify by counsel. Such a procedure can and should be followed in every case where a defendant establishes that he or she was denied the right to testify. Cf. Tenn. R. Evid. 103(a)(2). Therefore, the dissent's assertion that the harmless error doctrine can be applied only when "the defendant has been fortuitously tried twice and can demonstrate different outcomes" is totally without merit.

## CONCLUSION

To summarize, we hold that the right to testify is fundamental and constitutionally guaranteed by Article I, section 9 of the Tennessee Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. As such, the right must be personally waived by the criminal defendant. In cases tried or retried hereafter, trial courts should employ the procedural guidelines set forth in this opinion to ensure that a criminal defendant personally waives the right to testify. By unilaterally deciding not to call the appellant as a witness, counsel in this case deprived the appellant of his fundamental right to testify. While the error is subject to the harmless error doctrine, the record before this Court is not sufficiently developed to enable this Court to determine whether or not the error was harmless beyond a reasonable doubt. Accordingly, we remand to the trial court for a hearing at which the State shall bear the burden of establishing that the denial of the appellant's constitutional right to testify was harmless beyond a reasonable doubt. If the State fails to meet this burden, the trial court shall vacate the defendant's conviction. Costs of this appeal are taxed to the State of Tennessee.

FRANK F. DROWOTA III,
JUSTICE

**Concur:**
Anderson, C.J.,
Holder, J.

**Concurring/Dissenting**
Barker, J. and Birch, J. - See separate Concurring/Dissenting Opinion.

-23-