**Harry MANNING, alias, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Supreme Court of Tennessee.

Oct. 15, 1973.

Samuel B. Schlanger, Asst. Public Defender, Nashville, for plaintiff-in-error.

David M. Pack, Atty. Gen., of Tenn., William C. Koch, Jr., Asst. Atty. Gen., Arnold Peebles, Jr., Tom P. Thompson, Jr., Asst. Dist. Attys. Gen., Nashville, for defendant-in-error.

## OPINION

W. M. LEECH, Special Justice.

Defendant was convicted of armed robbery with a resulting punishment of ninety-nine years. The Court of Criminal Appeals reversed and remanded for a new trial raising an issue which had not been raised during trial, in the motion for new trial, or by assignment of error on appeal —that issue being the trial court's failure to instruct the jury on the defense of alibi. Therefore, this Court granted certiorari to review the action of the Court of Criminal Appeals.

Essentially, the State assigns two errors. First, the State asserts that it was error for the Court of Criminal Appeals to consider the unassigned error in this case. The State agrees that an appellate court can recognize error on its own motion but argues that this practice should be limited to the technical record.

■■■ That argument is not tenable. Davidson v. State, 223 Tenn. 193, 443 S. W.2d 457; James v. State, 215 Tenn. 221, 385 S.W.2d 86; Stallard v. State, 187 Tenn. 418, 215 S.W.2d 807. Our appellate courts, as in this instance, appear to act in accordance with the language in Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798:

"In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."

This Court has recognized that interpretation in Jacobs v. State (unreported opinion, February 16, 1971) wherein the dissenting opinion of Judge Walker of the Court of Criminal Appeals was adopted as the opinion of this Court. Therein, it was stated:

"This court, of our own motion, of course, may notice errors not presented to the trial court or raised here; but I do not think this is a proper case to do so or that it is required by the facts before us. The chief function of an appeal in a criminal case is to see that justice is done to the appellant. A defendant who did not secure a fair trial should have another. That is not involved here."

Judge Oliver wrote much the same thing in this case, saying that the right to act on unassigned error exists where not "[T]o do so would be nothing less than knowingly perpetrating a palpable injustice."

The precise question, then, becomes whether the defendant was denied a fundamentally fair trial by the failure of the trial judge to charge alibi. The resolution of this question involves the evidence presented in the case and an interpretation of our leading case on the failure to charge alibi, Poe v. State, 212 Tenn. 413, 370 S.W.2d 488.

The relevant evidence is as follows: Around 5:30 P.M. on November 8, 1971, Robert Sheehan left his place of employment and walked south on Third Avenue in Nashville. As he walked, two men, later identified as the defendant and a co-defendant, Wolfe, stepped in front of him. The defendant stuck a pistol in Sheehan's stomach and said, "Do exactly as I tell you or I'll blow a hole in you," and then ordered Sheehan to go into a nearby well-lighted alley where Wolfe took Sheehan's wallet, stuffed its contents into his pocket and returned the wallet to him. In the wallet were two $20 bills and one $10 bill wrapped in a page torn from a magazine on which there was a picture of a suit, and three one dollar bills. Reporting the incident immediately, Sheehan returned to the place where he was robbed. Spotting the robbers, he started to a nearby liquor store to call the police again, when he saw a patrol car and stopped it and told the police-

men what had happened. Sheehan and the policemen then drove back to the place where the robbers were last seen. The two men were still in the vicinity and upon seeing them, the policemen pulled the patrol car behind them, ordered them to stop, and arrested them. The defendant had a gun. Wolfe had two $20 bills and one $10 bill wrapped in a page torn from a magazine and three one dollar bills.

Sheehan positively identified the defendant in court as the man who robbed him. As a rebuttal witness for the State, Wolfe testified that he and the defendant robbed Sheehan and that he took his money while the defendant held a gun on him.

Testifying in his own behalf, the defendant denied having anything to do with robbing Sheehan. He testified that in the afternoon of November 8, he was at the Bamboo Lounge playing pool; that he then went to the Sixth Avenue Lunch and was with his girl friend, Wolfe, and a man named Robert; that while there, Wolfe and Robert borrowed his gun, left the place and returned twenty minutes later; that Robert then left for New Orleans; that about 7:00 P.M. he and Wolfe left to meet some people; that as they were walking along Third Avenue, they saw a man operating his car backward and forward in a parking lot as though looking for something, and that he and Wolfe were arrested shortly thereafter by Policeman Ezell who was accompanied by Mr. Sheehan; and that his revolver, the same one he had loaned to Wolfe earlier, was taken from him. Clearly, the defendant was attempting to raise the issues of identity and alibi.

There was other evidence in the record (which the Court of Criminal Appeals found admissible) that the defendant had robbed one Heathcott three days prior with a gun in the same area using the same words, "Don't lie to me or I'll blow a hole through you."

The Court of Criminal Appeals interpreted Poe v. State, supra, as holding that where the evidence raises the issue of alibi,

it is the duty of the trial judge to give instructions on that issue, without request. And failure to so instruct is error as this deprives the accused of his constitutional right to a fair trial. In other words, failure to so instruct affects the fundamental fairness of the trial and requires recognition of the unassigned error and reversal. The State assigns as their second contention that the court below misapplied *Poe*. With this, we agree.

A close reading of *Poe* and its foundation cases reveals that the case stands for the proposition that the evidence must first *fairly* raise the defense of alibi before this Court will reverse for failure to charge. In *Poe,* this Court stated:

"The trial judge charged the jury upon the subject of reasonable doubt, but failed to give them any instruction on the issue of alibi. While there was no special request for such instruction, we think, *in the circumstances of this case,* that it was the duty of the Trial Judge, without any request, to give the jury proper instructions which would fairly submit to them this issue of defendant's alibi. It was fundamental to his defense and such instruction was essential to a fair trial." (Emphasis added)

Further, the Court stated:

"We think such instruction ought to have been given *in the case before us. It was a close case on the facts,* and an alibi was practically the only defense." (Emphasis added)

In Davis v. State, 64 Tenn. 612, the foundation case, this Court stated:

"We have repeatedly held that *when the proof fairly* raises the defense of alibi, the jury should be instructed that (if) *this proof, in connection with the other proof in the cause, raises a reasonable doubt as to whether the accused was at the place of the homicide or at a different place,* the defendant should be acquitted. This is a sound rule and (such instruction) ought to be given to the

jury in direct and unequivocal language." (Emphasis added).

██ While not stating it per se, this Court has implicitly recognized that a defendant's own bare assertion may not fairly raise the alibi issue to the point that requires a reversal for failure of the court to give an alibi instruction. That conclusion emanates from a survey of the cases which point to the fact that the defense of alibi has been said to have been *fairly* raised in three sets of circumstances:

(1) where the defendant's alibi has been corroborated by other credible witnesses, Poe v. State, supra; Odeneal v. State, 128 Tenn. 60, 157 S.W. 419; Ford v. State, 101 Tenn. 454, 47 S.W. 703; Lemons v. State, 97 Tenn. 560, 37 S.W. 552; Chappel v. State, 47 Tenn. 92; Wynne v. State, 45 Tenn. 319; Thompson v. State, 24 Tenn. 138; (2) where the victim has been unable to identify the defendant, Ford v. State, 101 Tenn. 454, 47 S.W. 703; Jefferson v. State, 3 Tenn.Cas. (Shannon) 329; Wynne v. State, 45 Tenn. 319; (3) where the proof against the defendant is wholly circumstantial, Davis v. State, 64 Tenn. 612; Sawyers v. State, 83 Tenn. 694.

██ The record in this case clearly shows that the defendant's alibi evidence does not come within any of these three areas. The defendant introduced no evidence to corroborate his allegations that he was not present at the scene of the crime. In fact, he apparently could not supply the State or his attorney with the names of those who could have corroborated his story. The victim positively identified the defendant both shortly after the robbery and at the trial. Finally, the State's case was made up entirely of direct evidence: the positive identification of the defendant by the victim; the positive testimony in court of the defendant's accomplice; the gun found in the defendant's possession shortly after the crime, and the proceeds of the robbery which were found in the co-defendant's possession. Against this there is only the bare assertion defendant was somewhere else. Can it be said that, on appeal, these facts fairly raise an alibi defense the failure to instruct about requires reversal?

If we are constrained to say that *Poe* requires such an instruction, because of the defendant's bare assertion, even without corroboration, other evidence, no identity problem, and a case not wholly circumstantial, it does not follow that reversal is required. If the charge was necessary under these facts, the failure to give it was harmless error beyond a reasonable doubt. *Poe* states:

"Nor was the omission or error of the Trial Judge, here complained of, saved by our Harmless Error Statute (TCA § 27–117). This statute does not preclude a reversal *for an error affecting the result of the trial,* or depriving the accused of his constitutional right to a fair trial by jury." (Emphasis added)

While § 27–117 T.C.A. does not *preclude* reversal, it does not demand it, if the error was harmless beyond a reasonable doubt. Under the facts in *Poe,* the error was not harmless beyond a reasonable doubt. That is why the Court qualified its statement so that it applies to "[e]rror affecting the result . . . ."

Although the alibi charge should have been given, both the defendant and the State being entitled to it, it is also clear beyond a reasonable doubt that had the instruction been given the outcome of the case would have been the same. This makes applicable § 27–116 T.C.A.[1] which goes beyond § 27–117 T.C.A. and forbids reversal by this Court unless the error, in the opinion of this Court, affected the result. The great Chief Justice Lansden said of § 27–116, "[t]he merits of a criminal

---

1. "27–116. *Reversal on merits.*—No judgment, decision, or decree of the inferior court shall be reversed in the appellate courts, unless for errors which affect the merits of the judgment, decision, or decree complained of."

case is the guilt or innocence of the accused.", where this appears to the Court beyond a reasonable doubt, and it is also clear the omission of the judge to instruct would not have changed the result, had it not occurred, the judgment of conviction must be affirmed.

We find no merit in respondent's assignments of error.

The judgment of the Court of Criminal Appeals is set aside and the judgment of the trial court is affirmed.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.