# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## MARCH 1999 SESSION

FILED

October 14, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. 03C01-9807-CC-00249 |
| | ) | RHEA COUNTY CIRCUIT |
| | ) | |
| Appellee, | ) | Hon. Buddy D. Perry, Judge |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | (ATTEMPT TO COMMIT |
| | ) | AGGRAVATED RAPE) |
| | ) | NO. 14229 |
| | ) | |
| CARLOS D. MATHIS, | ) | |
| | ) | |
| Appellant. | ) | |

FOR THE APPELLANT:

FOR THE APPELLEE:

B. JEFFERY HARMON
Assistant Public Defender
P.O. Box 220
Jasper, TN 37347

JOHN KNOX WALKUP
Attorney General & Reporter

ERIK W. DAAB
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Bldg.
Nashville, TN 37243

JAMES MICHAEL TAYLOR
District Attorney General

WILL DUNN
Assistant District Attorney
365 Third Avenue, Suite 300
Dayton, TN 37321

OPINION FILED:_____

REVERSED AND REMANDED

CORNELIA A. CLARK
Special Judge

## OPINION

1

Appellant appeals as of right from his conviction for attempt to commit aggravated rape, a Class B felony. He was sentenced to serve twelve years. Appellant raises the following issues for review: (1) the trial court committed plain error in failing to give a jury instruction as to alibi; (2) the court committed reversible error in failing to give a jury instruction as to identity; (3) the court committed plain error in telling the jury "there are six (6) potential crimes that could have been committed"; and (4) the court erred in sentencing the appellant. Upon review of the record, we conclude that we must reverse and remand for a new trial.

On May 17, 1997, Rose Runyon, the victim in this case, opened her flower shop located in Richland Plaza in Dayton, Tennessee, about 8:30 a.m. At approximately 9:00 a.m., a black male unknown to Mrs. Runyon entered her flower and gift shop. He indicated he was looking for a late anniversary present for his wife, having forgotten their anniversary a few days before. He looked around the store for about twenty to thirty minutes, then selected several stuffed animals for purchase. As Mrs. Runyon proceeded to the rear of the store to wrap and tape the presents selected, the man followed her to get cards to sign. Suddenly he grabbed her from behind, placed a knife to her throat, and stated, "Be quiet or I'll kill you." As she struggled, he cut her on the throat, mouth, chin, and neck. He attempted to place duct tape over her mouth but, because her face was covered with blood, the tape did not stick. Mrs. Runyon pleaded with the attacker and told him where her cash was located. The attacker then threw her to the floor and demanded that she undress. Mrs. Runyon stated, "You might as well kill me now. I'm not pulling my clothes off." The attacker pulled off her clothing and began to kiss her. He unzipped his pants, grabbed her breast, and attempted to penetrate her. At that moment, however, Kenneth Robbins, a customer, entered the store. The attacker fled through the back door, leaving behind the gifts he had chosen and a necktie with strips of duct tape on it. He took his knife with him. Mrs. Runyon was obviously upset and asked Robbins to stay until the police came.

Mrs. Runyon testified that she carefully looked at her attacker so that she would be able to identify him in the future. The rooms were well lit. She described the attacker to police as a black male, approximately five feet seven inches tall, approximately twenty-five years old, weighing between one hundred twenty and one hundred forty pounds, clean-shaven, and wearing tortoise-shell framed prescription glasses.

Prior to Mrs. Runyon's ultimate identification of the appellant, Dayton Police Officer Chris Sneed showed her photographs of approximately ten to twelve black male suspects, but she could not identify any of them as her attacker. Appellant's photograph was not included in the array.

Shortly after the attack Mrs. Runyon had occasion to describe her attacker to other Richland Plaza store owners. Margaret Philpott, manager of the neighboring Mountain Air Natural Food Shop, responded that a man matching the description of the attacker had come into her store on the two days preceding the attack. She testified at trial that on May 15, 1997, the same man remained in her store for approximately forty-five minutes but did not make a purchase. On May 16, he stayed in the store for approximately one hour, then purchased children's vitamins with a check. During her trial testimony, she identified the appellant as the check writer.

Another Richland Plaza store owner told Mrs. Runyon that a person meeting the attacker's description frequented his store. This owner believed that the individual worked at a local Arby's Restaurant. About two or three weeks after her attack, Mrs. Runyon and her daughter visited Arby's and, upon observing the appellant there, immediately recognized him as her attacker. She called the police and the appellant was arrested.

After the arrest, Officer Chris Sneed testified that he conducted a search of the appellant's residence and recovered tortoise-shell prescription glasses and duct tape. Mrs. Runyon later identified the glasses as those worn by her attacker. The appellant, clean-shaven at the time of arrest, told Officer Sneed that he was five feet six and one-half inches tall, that he weighed one hundred forty pounds, and was twenty-one

years old. These details fit the general description given by Mrs. Runyon. Sneed also obtained the appellant's marriage license showing that his wedding anniversary was May 12, five days before the incident. No knife, shirt, or pants matching the description given by the victim were ever found.

At trial Rose Runyon identified the appellant as her attacker.

The appellant testified in his own behalf and denied committing the offense charged. He stated that at the time of the incident he was at his father-in-law's brother's house with his wife, attempting to borrow money from his father-in-law. He testified that he then proceeded to a former employer's location in Chattanooga to obtain his paycheck. He testified that he had never been in the victim's store, that he had bought a present for his wife prior to his anniversary, that he had always weighed more than 140 pounds, and that he never wore glasses.

The appellant's alibi was corroborated by his father-in-law, Don Creasman. Creasman testified that he particularly remembered the day in question because he had worked the third shift, left work early in the morning, and cashed a check before driving to his brother's house. He intended to lend the appellant money. Creasman further testified that his daughter, her two children, and the appellant all were in the car when they arrived at his brother's house. His daughter was driving because the appellant could not drive a stick-shift. Creasman testified that the appellant was acting normally and showed no unusual marks or blood. The appellant and his family left for Chattanooga between 9:10 and 9:15 a.m. Creasman also testified that at the time of the incident the appellant weighed between one hundred seventy and one hundred seventy-five pounds, and that he never wore glasses.

On cross-examination, Don Creasman admitted certain inconsistencies between his testimony in the first trial[1] and the instant trial. For example, at the time of the first trial he said he had deposited his own paycheck on the day of the attack. However, a bank videotape showed that he cashed his check the day before this incident. At the second trial he said it was his wife's check he cashed in order to get money for his son-in-law. Creasman also acknowledged that he never raised the alibi

---

[1] The case had first been tried several months earlier and apparently resulted in a mistrial.

defense to the police during their initial investigation.

Appellant's uncle-in-law, Claude Creasman, also testified about the event. His story was consistent with those of his brother and the appellant. However, he could not remember details about the exact day when the meeting occurred.

The defense also called Special Agent Forensic Scientist Robert McFadden of the Tennessee Bureau of Investigation. Agent McFadden testified that he had developed three latent prints on the duct tape found on the tie which was left at the scene of the offense. The fingerprints did not match those of either the victim or the appellant.

Kelly[2] Mathis, appellant's wife, was called by the state as a rebuttal witness. She identified a statement she gave to police on June 5, 1996, indicating that she and her husband were home at the time of the attack and did not leave the house all day. The statement was given before Mrs. Mathis had an opportunity to speak with appellant after his arrest. Her statement contrasted with the statement originally given by appellant that he was in Memphis visiting his mother at the time of the attack.

Mrs. Mathis explained that the original statement was incorrect because she was scared and upset at the time she gave it. At trial she testified that on the evening of May 16, she asked her father if she could borrow money so that she and her husband could go to Chattanooga the next morning to pick up his final paycheck. She concurred with the testimony of her father that she, her husband, and her two children arrived at Claude Creasman's home in Dayton, Tennessee, between 9:00 a.m. and 9:30 a.m. Her father loaned them twenty dollars and they left to go to Chattanooga. She stated that neither she nor her husband had been at Richland Plaza that morning. She further testified that her husband had not forgotten their anniversary and had bought her an angel ring as a gift.

_____

[2] In the court reporter's transcript, Mrs. Mathis's first name is spelled "Kelli". However, in her statement, signed in her own hand, Mrs. Mathis spells her name "Kelly".

**JURY INSTRUCTIONS**

Appellant raises two issues concerning error in the jury instructions: (1) the failure to instruct the jury as to the defense of alibi, and (2) the failure to instruct the jury as to identification.

**A. ALIBI**

Trial courts have an affirmative duty to instruct the jury on every issue raised by the proof, including the accused's theory of defense, and specifically including the defense of alibi. Poe v. State, 212 Tenn. 413, 370 S.W. 2d 488, 491 (Tenn. 1963). See also State v. McPherson, 882 S.W. 2d 365, 374 (Tenn. Crim. App. 1994)(citations omitted). When a defendant pursues an alibi defense at trial, the trial court must instruct the jury on the defense when it is "fairly raised" by the evidence. Manning v. State, 500 S.W. 2d 913, 916 (Tenn. 1973); Poe, 370 S.W. 2d at 491. See also State v. Hardin, 691 S.W. 2d 578, 581 (Tenn. Crim. App. 1985). The duty exists irrespective of a request for the instruction by the defendant. Poe, 370 S.W. 2d at 491.

Our Supreme Court has provided three scenarios reflecting when an alibi defense has been "fairly raised", thereby making the instruction mandatory. Manning, 500 S.W. 2d at 916. Those scenarios are:

> (1) where the defendant's alibi has been corroborated by other credible witnesses;
>
> (2) where the victim has been unable to identify the defendant; or
>
> (3) where the proof against the defendant is wholly circumstantial.

*Id.* Only when the evidence fairly raises the defense by meeting one of the above circumstances does the trial court have an unequivocal duty to instruct the jury. Where the evidence does not meet these circumstances, the trial court is not required to give such an instruction. Almonrode v. State, 567 S.W. 2d 184, 186 (Tenn. Crim. App. 1978).

The appellant's wife, her father and her uncle all testified that appellant was with them at or sufficiently near the time of the offense to make his commission of it impossible. Although appellant's wife admitted that her initial statement to police was inconsistent with her trial testimony, she explained that she was nervous and upset when she made the initial statement. There existed a direct conflict in the factual testimony of the defense witnesses and the victim. Thus the appellant fairly raised the defense of alibi and it was for the jury to evaluate the credibility of witnesses and decide the factual issue. Because the evidence satisfies the first Manning prong, we find that an instruction on the defense of alibi was warranted, and that failure to give it constituted error.

Finding that the trial court erred in its jury charge by omitting the alibi instruction, we cannot say that it is harmless error. When the defense of alibi is fairly raised by the proof at trial, the failure so to instruct the jury is reversible error. Poe, 370 S.W. 2d at 490-491; See also Manning, 500 S.W. 2d at 916. When an alibi is supported by the proof, the instruction is fundamental to the defense and essential to a fair trial. Poe, 370 S.W. 2d at 491. It follows that the appellant's conviction must be reversed and a new trial ordered.

## B. IDENTIFICATION

The appellant also contends that the trial court erred in failing to instruct the jury as to identification. In State v. Dyle, 899 S.W.2d 607, 612 (Tenn. 1995), the Tennessee Supreme Court held that whenever identification is a material issue in a case, and it is requested by appellant's counsel, a specific new instruction on identity adopted by the court must be given. Failure to give the instruction under those circumstances constitutes plain error. Id. at 612; State v. Cribbs, 967 S.W.2d 773, 780 (Tenn. 1998).

In this case, however, appellant's counsel did not request that an instruction be given concerning identity. Neither was the issue raised in the motion for new trial. Therefore, we must determine whether the trial court's failure to give the Dyle instruction is harmless or prejudicial error. Tenn. R. Crim. P. 52(a) ("No judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits."); State v. Cribbs, 967 S.W.2d 773,

7

780 (Tenn. 1998).

The victim in this case gave a detailed description of her attacker almost immediately after the police arrived. She testified that she had looked carefully at him so that she would be able to identify him in the future. Her description was consistent with the appellant's appearance at the time of his arrest. The victim ultimately made a positive identification of the appellant when she visited his place of employment, and again at trial. Another nearby business owner identified the appellant as a person who had loitered in her store for some time on the two days before the crime. The victim also ultimately identified glasses she claimed were worn by her attacker and that were found in his residence.

Notwithstanding that identification testimony, much of the rest of the proof was circumstantial. Because (1) appellant introduced evidence of alibi, (2) no clothes or knife matching those described by the victim were ever found, and (3) no fingerprints matching the appellant's were identified, we would be inclined to find that the error in failing to give the Dyle instruction, standing alone, did affect the verdict in this case. Having already determined that failure to instruct the jury as to the defense of alibi constitutes reversible error, we address this issue separately for the benefit of the trial court on remand. Taken together, it is clear that failure to give the two instructions may have affected the verdict.

## SENTENCING

For the benefit of the trial court on remand we will also address the alleged errors in sentencing. The appellant asserts that the trial court erred in imposing the maximum twelve-year sentence for this Class B felony.

When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with the presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under the sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v.

Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances". State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. §§40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Under Tenn. Code Ann. §40-35-210 a court at sentencing is required to consider all the following: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments of sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors; and (f) any statement the defendant wishes to make in his own behalf about sentencing. The court can use evidence or information offered by either party at any phase of the proceeding in determining what enhancement and mitigating factors apply. The court can also receive information as to these factors from the presentence report, even though the information was not asserted by the parties. Tenn. Code Ann. §40-35-207(a)(5). Neither party is required to file a statement of proposed enhancement or mitigating factors unless required to do so by the court. Tenn. Code Ann. §40-35-202(b). However, a court is always required to consider the existence of these factors in making its sentencing determinations. Finally, in conducting our de novo review, this court is authorized to consider any enhancement or mitigating factors supported by the record, even if not relied upon by the trial court. State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993). The burden is on the defendant to show that the sentence was improper. Sentencing Commission Comments, Tenn. Code Ann. §40-35-401(d).

In imposing its sentence the court considered three enhancing factors under

T.C.A. §40-35-114: (1) the appellant has a previous history of criminal convictions; (11) the felony resulted in death or bodily injury and the appellant has previously been convicted of a felony involving bodily injury; and (20) the appellant was adjudicated to have committed delinquent acts as a juvenile that would constitute a felonies if committed by an adult. The trial judge also apparently considered as a mitigating factor the fact that appellant had a good work history and a willingness to work.

Appellant, as a juvenile, was adjudicated delinquent for committing the offenses of first degree murder of one woman, and aggravated assault and attempted aggravated rape of a second woman. He was committed to the Department of Youth Development until his twenty-first birthday. While at Taft Youth Center, but after he turned eighteen, appellant was convicted of criminal conspiracy to commit aggravated riot. He was sentenced to serve a consecutive sentence for this adult offense.

Appellant's argument as to the erroneous application of the three enhancement factors is unclear. He does not specifically contest the application of factors (1) or (20). Indeed he cannot. He has one prior adult conviction and three very serious juvenile adjudications, all of which would have mandated lengthy prison sentences if committed by an adult.

The state takes the position that the third enhancement factor relied upon by the trial court is factor (11), which permits enhancement where bodily injury is inflicted and the defendant has previously been convicted of a felony involving bodily injury. The trial court's statement on this issue is confusing:

> THE COURT: . . . The enhancing factors are, at least, three. I am going to refer to them by numbers.
>
> . . .
>
> Number 2. The felony resulted in death or bodily injury, and in this case bodily injury, be it minor bodily injury but significant mental injury obviously, . . .

The appellant asserts only that psychological or emotional injuries are not considered enhancement factors. We agree that such emotional injuries, by themselves, do not establish any of the enhancement factors contained in T.C.A. §40-35-114 which would allow for enhancement of the sentence above the

presumptive minimum. <u>State v. Reid</u>, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994).

To the extent that the court intended to apply factor (11), it did so in error. Appellant's only prior adult conviction is for conspiracy to commit aggravated riot, a Class A misdemeanor. While he was adjudicated delinquent as a juvenile for the very serious offenses of first degree murder, attempt to commit aggravated rape, and aggravated assault, these juvenile adjudications cannot be utilized to make factor (11) applicable. When imposing sentence for offenses committed on or after July 1, 1995, a court may consider prior juvenile offenses only under T.C.A. §40-35-114(20). <u>State v. William Jason McMahan</u>, No. 03C01-9707-CR-00262, Knox County (Tenn. Crim. App., at Knoxville, March 31, 1999); <u>State v. Brent Brown</u>, CCA No. 02C01-9710-CC-00419, Hardeman County (Tenn. Crim. App., at Jackson, October 26, 1998).

For a Range I, Standard Offender, the range of punishment upon conviction of a Class B felony is eight (8) to twelve (12) years. The minimum sentence within the range is the presumptive sentence. If there are enhancing but no mitigating factors, a court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. <u>State v. Shelton</u>, 845 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The trial court appeared to give the most weight to the serious nature of the offenses committed while appellant was a juvenile, pointing out that, if he had been convicted of first degree murder as an adult, the offense before him would never have occurred, since the appellant would have remained in jail.

Since the court misapplied one enhancement factor, our review is *de novo* upon the record. However, after conducting that review, we conclude that the trial court properly sentenced the appellant. Appellant's record of violent behavior against women from a young age is entitled to great weight. Having found the existence of two enhancing factors, and only one mitigating factor, we find the record supports the trial court's judgment that a twelve-year sentence is appropriate. This issue has no merit.

For the reasons set forth above, we reverse the judgment of the trial court and remand this cause for a new trial.

_____
CORNELIA A. CLARK
SPECIAL JUDGE


_____
GARY R. WADE
PRESIDING JUDGE


_____
NORMA McGEE OGLE
JUDGE