# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 2, 2003 Session

## EUGENE TURNER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court of McNairy County**
**No. 1160     Jon Kerry Blackwood, Judge**

---

**No. W2003-00824-CCA-R3-PC  - Filed January 29, 2004**

---

A McNairy County jury convicted the Petitioner, Eugene Turner, of two counts of premeditated first degree murder and the trial court sentenced the Petitioner to two concurrent life sentences with the possibility of parole.  On direct appeal, this Court affirmed the conviction, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal.  The Petitioner then sought post-conviction relief in the trial court, alleging that he was denied effective assistance of counsel.  Following a hearing, the post-conviction court dismissed the petition.  Finding no error, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Pamela Drewery-Rodgers, Selmer, Tennessee, for the appellant, Eugene Turner.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Jerry W. Norwood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

This Court summarized the underlying facts of the Petitioner's case on direct appeal as follows:

> On December 3, 1997, at 12:41 a.m. the defendant placed a 911 call to the McNairy County Sheriff's Office.  He told the dispatcher someone had broken into his home and shot his wife. Officers later discovered the bodies of defendant's wife and stepdaughter at the residence.  Both had been shot in the head with a 9mm handgun.  The wife had multiple near gunshot wounds to the head, and the

stepdaughter had one near gunshot wound to the head. The family dog had also been shot and killed. However, there was no evidence of forced entry into the mobile home and no evidence of a struggle inside.

Several witnesses testified that they saw the defendant with a 9mm handgun a few weeks prior to the murder. Dewayne Scott testified that he loaned the defendant a 9mm Ruger approximately six months prior to the murder, and the defendant never returned the weapon. Analysis of the clothing [the] defendant was wearing on the night of the murders revealed the presence of gunpowder residue.

Additionally, two different individuals heard the defendant threaten to kill his wife prior to the murders. One witness testified that the couple fought over the family dog on several occasions. Approximately one week before the murder, the defendant stated that "if the dog gets put to sleep, the whole damn family will get put to sleep." Another witness testified that the defendant warned his wife on two separate occasions that if she tried to leave him, he would kill her. Furthermore, the couple's babysitter stated that she witnessed a drunken altercation between the couple. She stated the two were "fussing," and the defendant placed an unloaded gun to his wife's head and pulled the trigger several times.

Thomas Kiracofe, the defendant's cellmate, testified that the defendant told him he shot his wife during an argument over the dog. Kiracofe stated [the] defendant then told him that he shot his stepdaughter because she was a witness to his wife's murder. Kiracofe further testified that he and the defendant planned to escape from prison.

The defendant did not testify at trial but his statement to authorities was read to the jury. In that statement the defendant stated that he had been out drinking on the night in question, did not own a gun, and did not kill his wife and stepdaughter. [The] [d]efendant also endeavored to show through other witnesses that he was cooperative with authorities throughout the investigation and voluntarily surrendered himself for questioning.

The jury convicted the defendant of two counts of premeditated murder, and he received two concurrent life sentences.

State v. Turner, No. W1999-01866-CCA-R3-CD, 2000 WL 1473857, at *1-2 (Tenn. Crim. App., at Jackson, Oct. 2, 2000), *perm. app. denied* (Tenn. Apr. 9, 2001).

This Court affirmed the Petitioner's conviction on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. Thereafter, the Petitioner filed a pro se post-conviction petition, and the post-conviction court appointed counsel to represent the Petitioner in this post-conviction matter. The Petitioner's counsel filed an amendment to the

-2-

Petitioner's original petition for post-conviction relief, and the petition alleged that the Petitioner should be granted post-conviction relief based upon numerous theories involving ineffective assistance of counsel at various stages of his representation. The Petitioner contends that he was denied effective assistance of counsel when the Petitioner's trial counsel, Gary Antrican ("Counsel"), failed to file a motion for a change of venue, failed to request a Bill of Particulars to narrow the time of death in order to prove alibi, failed to request alibi instructions be read to the jury and "acquiesced" to the trial court's failure to instruct on alibi, and failed to call an independent ballistics expert. The trial court conducted a hearing on the amended petition, after which it issued an order dismissing the petition. The Petitioner filed a timely notice of appeal.

The following evidence was presented at the post-conviction hearing: The Petitioner testified that he thought it was a good idea to change the venue because of "pre-trial publicity" in newspapers and on television. He explained that for three or four weeks after the murders, the story was covered in the local news every day. The Petitioner stated, however, that the trial took place nearly fifteen months after the murders and that there was "not really" any publicity immediately prior to the trial. He testified that he and Counsel discussed the change of venue issue and that Counsel explained to him that an independent investigation was conducted concerning the ability to get a fair jury panel in the county. The Petitioner further testified that he saw a juror sleep through the trial but could not remember her name and was unsure whether he could positively identify her from a list of the jurors. He described her as "an older lady." He admitted that he helped Counsel pick the jury and that he conferred with Counsel to strike jurors who were "disagreeable" to him. He also admitted that the trial court dismissed some potential jurors during the voir dire process.

The Petitioner testified that Counsel should have requested a Bill of Particulars that would have narrowed the times of death of the victims. He recounted that his brother-in-law left the Petitioner's mobile home at around 8:30 p.m. and, at that time, the Petitioner's wife was alive. He stated that the next time he could account for his location was at 10:00 p.m. at the Amoco station located approximately thirteen miles from his mobile home. He explained that there was also evidence that his brother called him at his home at around 10:30 p.m. and that he spoke with his brother at that time. On cross-examination, the Petitioner admitted that the telephone call from his brother was in response to a call that had been made from the Petitioner's house earlier that evening.

The Petitioner testified that the next time his whereabouts could be accounted for was at around 12:00 a.m. at Taz's Tavern, located approximately fourteen miles from his mobile home. The Petitioner stated that police officers determined it would take fourteen minutes to get from Taz's Tavern to his house but "that was at a hundred miles an hour, or whatever their cars go." The Petitioner stated that he left Taz's Tavern at around 12:00 a.m. and arrived at home at around 12:30 a.m. He explained that he was "[p]robably doing the speed limit because I'd been drinking and I didn't want to get pulled over." He testified that, when he arrived home from the tavern, he saw the bodies of his wife and step-child and called the police, and an officer was dispatched at approximately 12:31 a.m. The Petitioner testified that he wanted a Bill of Particulars to show that he "couldn't have left [Taz's Tavern] and [gone] home and did everything they said I did . . . in the amount of time–I mean, it was impossible."

The Petitioner testified that he and Counsel may have discussed an alibi defense "a little," but that they "didn't discuss it a whole lot." Lastly, the Petitioner testified that Counsel was ineffective for failing to call a ballistics specialist to prove "[t]hat there was probably more than one gun used in the crime. They never did narrow down the ballistics to one certain gun."

The Petitioner then called Counsel to testify. Counsel testified that he had an investigator, Harold Black, contact people in "various parts of the county." Counsel explained the investigator's findings:

> [H]e contacted 16 people. He made a written report of the questions . . . that he asked, and gave them to me and I think to capsulize it would be to say that of the 16, 14 of them–well, I think practically all of them said they had heard something about the case, either through the newspaper or the radio or some type of media. Fourteen and maybe 15 of the 16 said that they felt like that . . . wouldn't [e]ffect their opinion or their ability to sit fairly as a juror in this case, and that they felt like he would–he could get a fair trial in McNairy County.

Counsel testified that he thought that he and the Petitioner discussed these findings and why Counsel did not ask for a change of venue. He explained, "I don't know for sure, but he probably agreed with it or just said, 'I'll go along with that.' I'm not trying to put words in his mouth, but he didn't object strenuously to the idea of not pursuing the change of venue." Counsel further explained that he practiced before the trial court prior to this case and believed that "if you file a motion for a change of venue, [the trial court] will withhold [its] decision until the date of the trial, and if it becomes evident that . . . a fair jury can't be picked, [the trial court will] grant the motion . . . ." Counsel stated that if it appeared that the Petitioner was unable to select a fair jury he would have filed the motion at that time, "[b]ut that didn't occur."

Counsel testified that he used eight peremptory challenges during voir dire[1] and that "almost everyone had heard something about the case." He explained that, while nearly all of the potential jurors had heard something about the case, "almost everyone said they could be fair if they had to sit as a juror . . . ." Counsel stated that he had no independent recollection of a juror sleeping during the trial, but he did recall seeing something in the transcript that the judge was going to speak with an individual.

Counsel testified that he had no recollection of discussing with the Petitioner the Petitioner's desire that he file a Bill of Particulars. Counsel explained that he had a file prepared by the Tennessee Bureau of Investigation ("TBI") that contained everybody's statements regarding the

---

[1]Tennessee Code Annotated section 40-18-118 provides that "If the offense charged is punishable by imprisonment for more than one (1) year but not by death, each defendant is entitled to eight peremptory challenges . . . ." Although the Petitioner was charged with two counts of premeditated first degree murder, the State did not pursue a death sentence. Thus, the Petitioner was entitled to eight peremptory challenges and exhausted all of them.

Petitioner's whereabouts for the night of the murder. Counsel stated that after reviewing the file, he "didn't see any point in filing a Bill of Particulars." Counsel recounted that:

> [I]f you summarize what everybody's testimony would be, including my discussion with [the Petitioner], it would go something like this, somewhere around 8:30, his wife's brother and wife went to pick up a child . . .; that he decided he was going to go up town and somewhere around 9:15 he left to go up town and he rode around a little bit . . . . He stopped back by Amoco station . . . . If I'm not mistaken, that was about 10:08. At 10:37 or 38, there was a message on his caller ID that his brother had called . . . . After that conversation . . . , he left again and he was seen next time at [Taz's Tavern] . . . . at . . . 11:40 . . . , and I believe also [a witness] said that [the Petitioner] was among the last to leave that night, which I think would have been around 12:10. That's the most anybody could tell me anyway. I talked with witnesses, the officers that investigated. I talked to the people that had given statements to the TBI. I talked to witnesses that [the Petitioner] gave me. And I don't know what else I could get from a Bill of Particulars, except for everything I already had.

Counsel testified that he spoke with the medical examiner to try to narrow the times of death, but the medical examiner was unable to give more definitive times of death. He stated that he believed he spoke with a local coroner who also could not narrow the times of death. Counsel explained that after consulting with these experts he did not move for a Bill of Particulars to narrow the times of death.

Counsel testified that he did not speak with the Petitioner about an alibi instruction because there were "two or three gaps in time there where [the Petitioner] is unaccounted for by anybody except for himself."

Counsel explained that he did not call an independent ballistics expert because the independent ballistics expert that he hired "gave me a report about what his findings were. . . . He went over to the TBI lab and examined the bullets. . . . He agreed with the TBI's findings and, basically, there was no reason . . . to call him because all that would have done . . . would be to reinforce the State's proof."

Following the presentation of the evidence, the trial court found that the Petitioner was not denied effective assistance of counsel and dismissed the petition, holding the following:

> [W]ith regard to the allegation of ineffective assistance of counsel regarding the issue of change of venue, the Court finds [C]ounsel was not ineffective in that regard in that he made an independent investigation of the opinions of the–random sample of the community and concluded that the community, although aware of the event, could be fair and impartial. That is borne out by the jury selection process in which

all the jurors seated indicated they could put aside anything they knew about the case and could render a fair and impartial verdict.

The Court finds that the . . . [P]etitioner's counsel was not ineffective in failing to file for a Bill of Particulars in that he had the T.B.I. file. He was aware of all the relevant times that would be testified as to trial and that the Bill of Particulars would have been of no benefit because it provided no additional information.

The Court finds that . . . the [P]etitioner's attorney was not ineffective in requesting that the Court charge alibi in that an alibi, because of the substantial gaps in time in the record, would not have been borne out by the proof.

And, lastly, the Court finds that [Counsel] was not ineffective in seeking the opinion of an expert in ballistics in that he did acquire the services of a ballistics expert and this ballistics expert would have offered no proof in contradiction to the proof already being presented by the State.

## II. Analysis

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (1997). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable

probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

On appeal, the Petitioner argues that the post-conviction court erred by finding that he was not denied effective assistance of counsel. Specifically, the Petitioner contends that he was denied effective assistance of counsel because of the following: (1) Counsel failed to move for a change of venue; (2) Counsel failed to move for a Bill of Particulars to narrow the times of death in order to prove alibi; (3) Counsel failed to object to the lack of alibi instructions given by the trial court; and (4) Counsel failed to call an independent ballistics expert.

## A. Failure to Move for a Change of Venue

The Petitioner alleges that Counsel was ineffective for failing to move for a change of venue. He asserts that a change of venue was necessary due to pretrial publicity and the "paucity of veniremen" in McNairy County who had not heard or read about the murders. The State responds that the Petitioner has failed to show either ineffectiveness or prejudice. Regarding this issue, the post-conviction court found as follows:

> [C]ounsel was not ineffective . . . in that he made an independent investigation of the opinions of the–random sample of the community and concluded that the community, although aware of the event, could be fair and impartial. That is borne out by the jury selection process in which all the jurors seated indicated they could put aside anything they knew about the case and could render a fair and impartial verdict.

"[V]enue may be changed . . . if it appears to the court that, due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had." Tenn. R. Crim. P. 21(a). The ultimate test is whether the jurors who actually sat and rendered verdicts were prejudiced by the pretrial publicity. State v. Garland, 617 S.W.2d 176, 187 (Tenn. Crim. App. 1981). Prejudice will not be presumed by a mere showing that there was

considerable pretrial publicity. Dobbert v. Florida, 432 U.S. 282, 303 (1977); State v. Kyger, 787 S.W.2d 13, 19 (Tenn. Crim. App. 1989).

Relevant factors to consider when in determining whether to grant a motion for a change of venue include:

> 1. Nature, extent, and timing of pre-trial publicity.
> 2. Nature of publicity as fair or inflammatory.
> 3. The particular content of the publicity.
> 4. The degree to which the publicity complained of has permeated the area from which the venire is drawn.
> 5. The degree to which the publicity circulated outside the area from which the venire is drawn.
> 6. The time elapsed from the release of the publicity until the trial.
> 7. The degree of care exercised in the selection of the jury.
> 8. The ease or difficulty in selecting the jury.
> 9. The veniremen's familiarity with the publicity and its effect, if any, upon them as shown through their answers on voir dire.
> 10. The defendant's utilization of his peremptory challenges.
> 11. The defendant's utilization of his challenges for cause.
> 12. The participation by police or by prosecution in the release of publicity.
> 13. The severity of the offense charged.
> 14. The absence or presence of threats, demonstrations or other hostility against the defendant.
> 15. Size of the area from which the venire is drawn.
> 16. Affidavits, hearsay, or opinion testimony of witnesses.
> 17. Nature of the verdict returned by the trial jury.

State v. Hoover, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979).

In our view, the Petitioner has failed to present specific evidence of any pretrial publicity or any prejudice to the verdict. When a prospective juror indicated he or she had read a newspaper article, heard an audio news account, or talked to someone who claimed to have personal knowledge of facts pertaining to the prosecution, and the prospective juror indicated he or she had formed an opinion regarding the guilt of the Petitioner, the trial court excused the prospective juror. The trial court instructed, and made sure that, the remaining prospective jurors who were exposed to news accounts, but had not formed an opinion, could set aside what each prospective juror had heard and decide the case on the facts introduced into evidence. Each prospective juror assured the trial court he or she could and would comply with the trial court's instructions. Counsel testified that the jury impaneled was fair, and nothing in the record suggests otherwise.

We conclude that Counsel's decision not to request a change of venue "falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel made an independent

investigation of public opinion in the community about this case, and then properly questioned potential jurors in voir dire proceedings. Further, the Petitioner presented no evidence that Counsel failed to consider those factors listed in Hoover. Moreover, even if we were to find that Counsel erred, the Petitioner has presented no evidence of prejudice or that the outcome of the trial would be different. Accordingly, we conclude that the Petitioner is not entitled to post-conviction relief on this issue.

### B. Failure to Move for a Bill of Particulars

The Petitioner alleges that Counsel was ineffective for failing to move for a Bill of Particulars. He asserts that a Bill of Particulars was necessary to help "further his defense of alibi." The State responds that the Petitioner has failed to show ineffectiveness as Counsel testified that no one was able to narrow the times of death. Regarding this issue, the post-conviction court found as follows:

> [P]etitioner's counsel was not ineffective in failing to file for a Bill of Particulars in that he had the T.B.I. file. He was aware of all the relevant times that would be testified as to trial and that the Bill of Particulars would have been of no benefit because it provided no additional information.

To satisfy the requirement of prejudice, the Petitioner must show Counsel's representation "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, as well as a reasonable probability that he was prejudiced by Counsel's failure to move for a Bill of Particulars. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris, 875 S.W.2d at 665. Further, the Petitioner must show that but for Counsel's unreasonable error, the jury would have reached a different finding regarding the Petitioner's guilt. Strickland, 466 U.S. at 687.

The Petitioner cites State v. Hammonds, 30 S.W.3d 294 (Tenn. 2000), which states:

> Where . . . an indictment sufficiently alleges the elements of the offense and otherwise complies with constitutional and statutory requirements, a defendant should move for a bill of particulars if additional particular information about the nature of the conduct or the theory upon which the State intends to rely to establish the criminal offense is needed.

Id. at 303. A bill of particulars is used "to narrow a general indictment and provide a defendant with enough information about the charge to allow the defendant to prepare a defense and avoid prejudicial surprise at trial." Id. When a defendant does not know the precise charges against him, he can move for a bill of particulars for clarification, including requiring the government to disclose the time of the alleged offense. State v. Hicks, 666 S.W.2d 54, 57 (Tenn. 1984). In Hicks, the Tennessee Supreme Court found that the trial court had committed reversible error by failing to grant the defendant's motion for a bill of particulars. Id. The defendant in Hicks was charged with two

counts of aggravated rape, but the State did not provide the defendant with an approximate time during the fourteen-month period covered in the indictment as to when and where the alleged rapes took place. Id.

The case before us is distinguishable from Hicks. In this case, the Petitioner failed to show that additional particular information was needed. Counsel testified at the post-conviction hearing that he had a file prepared by the T.B.I. that contained everyone's statements regarding the time line of events. Accordingly, Counsel "didn't see any point in filing a Bill of Particulars." Further, Counsel testified that he spoke with the medical examiner to try to narrow the times of death, but the medical examiner was unable to provide more definitive times of death. Additionally, he stated that he believed he spoke with a local coroner who was also unable to narrow the times of death. Counsel explained that after consulting with these experts he decided not to move for a Bill of Particulars.

First, we conclude that Counsel's decision not to file a motion for a Bill of Particulars "falls within the wide range of reasonable professional assistance" because there was no question as to the date of the murders, and the medical examiner and local coroner could not provide more definitive times of death. Burns, 6 S.W.2d at 462. Moreover, even if we were to find that Counsel erred, we agree with the post-conviction court that the Petitioner failed to meet his burden of proving that he was prejudiced by Counsel's failure to move for a Bill of Particulars. The Petitioner presented no evidence of prejudice; all he alleges is that Counsel should have filed a motion for a Bill of Particulars but, as Counsel testified at the post-conviction hearing, there was nothing he could get from a Bill of Particulars that he did not already have. Accordingly, we conclude that the Petitioner failed to show how he was prejudiced by Counsel's failure to move for a Bill of Particulars to narrow the times of death. Therefore, the Petitioner is not entitled to post-conviction relief on this issue.

## C. Instruction Jury on Defense of Alibi

The Petitioner alleges that Counsel was ineffective because he "acquiesced" in the trial court's failure to instruct on alibi.[2] The Petitioner contends that "there were several distinct times that the [Petitioner's] whereabouts were known to be other than the crime scene" on the night of the murders and that if the jury was instructed on alibi, "the jury would have been more inclined to consider the time he was away from the home/crime scene," which could have resulted in a different

---

[2]The Petitioner also alleges that trial court erred in failing to instruct the jury on alibi. We conclude that the issue regarding the trial court's failure to instruct on alibi is waived because it was not raised in the Petitioner's direct appeal of his conviction. A post-conviction court shall dismiss claims which have been waived. Tenn. Code Ann. §40-30-106(f) (1997). "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," with certain exceptions not applicable in the present case. Tenn. Code Ann. §40-30-106(g). Because the alleged failure of the trial court to instruct the jury on alibi could have been raised on direct appeal, the issue is waived in this post-conviction proceeding pursuant to code section 40-30-106(g). Accordingly, we conclude that the Petitioner is not entitled to post-conviction relief on this issue.

-10-

outcome. The Petitioner argues that Counsel was ineffective because he failed to object to the trial court's failure to instruct on alibi.

The post-conviction court determined that an alibi defense was not fairly raised by the evidence at trial, thus Counsel was not ineffective for failing to object to the trial court's failure to instruct on alibi. The post-conviction court determined that insufficient evidence was presented at trial to "fairly raise" an alibi defense. The post-conviction court, in determining that an alibi defense was not fairly raised by the evidence, stated that "the [P]etitioner's attorney was not ineffective in requesting that the Court charge alibi in that an alibi, because of the substantial gaps in time in the record, would not have been borne out by the proof." After a careful de novo review of the trial record[3] and the post-conviction hearing, we agree with the post-conviction court.

A trial court has the affirmative duty to instruct the jury on every issue raised by the proof, including the accused's theory of defense, such as alibi. Poe v. State, 370 S.W.2d 488, 491 (Tenn. 1963). The trial court must instruct the jury on the defense of alibi when it is "fairly raised" by the evidence. Manning v. State, 500 S.W.2d 913, 915 (Tenn. 1973). This duty exists irrespective of whether a request for the instruction by the defendant is made. Poe, 370 S.W.2d at 491. Alibi is fairly raised in the following instances: (1) where the defendant's alibi has been corroborated by other credible witnesses; (2) where the victim has been unable to identify the defendant; and (3) where the proof against the defendant is wholly circumstantial. Manning, 500 S.W.2d. at 916. The failure to charge the jury with the defense of alibi when it has been fairly raised by credible evidence is reversible error. Moffitt v. State, 29 S.W.3d 51, 57 (Tenn. Crim. App. 1999).

From our review, we note, as the trial court did, that there are several gaps during the night of December 2, 1997, from the time the Petitioner's brother-in-law left the Petitioner's mobile home at around 8:30 p.m. until the call to 911 was made at 12:41 a.m. on December 3, 1997. A receipt was found which placed the Petitioner at the Amoco station at 10:00 p.m., and there was evidence of a telephone call placed at around 10:30 p.m. from the Petitioner's brother's house to the Petitioner's house. However, the Petitioner's next accounted for location was at around 12:00 a.m. at the Taz's Tavern. The Petitioner stated that he left Taz's Tavern at around midnight and arrived at home at around 12:30 a.m. He explained that he discovered the bodies once he arrived and that he called 911 dispatch at approximately 12:41 a.m. The Petitioner did not testify at the trial nor was he able to produce alibi witnesses to account for the gaps during the evening.

We agree with the post-conviction court that the defense of alibi was not fairly raised by the evidence. Therefore, it logically follows that the Petitioner did not meet his burden of proving that Counsel was ineffective for failing to object to the trial court's failure to give an alibi instruction. The Petitioner did not testify at trial. The statement he provided to the authorities was read to the jury, which stated that he did not own a gun, that he did not kill his wife and stepdaughter, and that

---

[3]Although a transcript of the trial was not included in the record on appeal, we may take judicial notice of the records of this Court. See Delbridge v. State, 742 S.W.2d 266, 267 (Tenn. 1987).

he had been out drinking on the night of the murders.

We conclude that Counsel's decision not to object to the trial court's failure to instruct the jury on the defense of alibi falls within the wide range of reasonable professional assistance because an alibi instruction was not borne out by the proof. See Burns, 6 S.W.2d at 462. Moreover, even if we were to find that Counsel erred, the Petitioner has failed to show a reasonable probability that had Counsel requested an alibi instruction (assuming the trial court would have granted the request), the jury would have had reasonable doubt regarding the Petitioner's guilt. See Strickland, 466 U.S. at 695.

The evidence of the Petitioner's guilt was overwhelming. Both victims had been shot in the head with a 9mm handgun in the Petitioner's home. There was no evidence of forced entry or struggle. Several witnesses at the trial testified that they saw the Petitioner with a 9mm handgun a few weeks prior to the murder including Dewayne Scott, who testified that he loaned the Petitioner a 9mm Ruger approximately six months prior to the murders which was never returned. Analysis of the clothing the Petitioner was wearing on the night of the murders revealed the presence of gunpowder residue which was never explained at the trial. Furthermore, two individuals testified that they heard the Petitioner threaten to kill his wife prior to the murders. The Petitioner's cellmate testified that the Petitioner told him he shot his wife during an argument over the dog and that he then shot his stepdaughter because she was a witness to his wife's murder.

In our view, the Petitioner has failed to show a reasonable probability of reasonable doubt "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Therefore, the Petitioner has failed to satisfy the "prejudice prong" of Strickland. Accordingly, we conclude that the Petitioner is not entitled to post-conviction relief on this issue.

### D. Failure to Call an Independent Ballistics Expert

The Petitioner alleges that Counsel was ineffective because he failed to call an independent ballistics expert. This issue is waived as the Petitioner has failed to cite authority to support his argument. Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See also Tenn. R. App. P. 27(a)(7); State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997). Accordingly, we conclude that the Petitioner is not entitled to post-conviction relief on this issue.

### III. Conclusion

We conclude that the post-conviction court properly found that the Petitioner failed to prove ineffective assistance of counsel by clear and convincing evidence. Accordingly, the judgment of the post-conviction court is AFFIRMED.

_____

-12-

ROBERT W. WEDEMEYER, JUDGE