IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 18, 2007

**YOUNG BOK SONG v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-C-1792     Steve R. Dozier, Judge**

_____

**No. M2007-00404-CCA-R3-PC - Filed March 4, 2008**

_____

The petitioner, Young Bok Song, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Young Bok Song.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian K. Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2004, the petitioner was convicted by a Davidson County jury of seven counts of rape of a child, a Class A felony, and four counts of aggravated sexual battery, a Class B felony, and was sentenced by the trial court to sixty-five years at 100% in the Department of Correction. His convictions were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. See State v. Young Bok Song, a/k/a Mike, No. M2004-02885-CCA-R3-CD, 2005 WL 2978972, at *1 (Tenn. Crim. App. Nov. 4, 2005), perm. to appeal denied (Tenn. Mar. 27, 2006). All of the rape convictions and all but one of the aggravated sexual battery convictions stemmed from acts committed over the course of a five-year span against S.L., the daughter of the petitioner's ex-girlfriend, who was eight years old at the time the abuse began. Id.

The remaining aggravated sexual battery conviction was based on an April 2003 episode in which the petitioner touched the breasts of S.L.'s younger sister, J.L.

The witnesses at trial included the victims, who related the incidents in detail; Chong Suk Pak, the victims' mother, who described her relationship with the petitioner; Brenda Griffith, the school teacher to whom S.L. first reported the abuse; Dr. Angela Latrice McShepard Carr, a school guidance counselor who spoke with S.L. about the abuse; Dr. Maureen Sanger, a psychologist with Our Kids Center in Nashville who conducted an interview with S.L.; Carolyn Smeltzer, a nurse practitioner who conducted the medical examination of S.L.; Edward Stotts, a case manager for the Department of Children's Services who conducted a forensic interview of J.L. and arranged for a forensic interview of S.L. to be conducted by another interviewer; Detective Brett Gipson with the Metropolitan Nashville Police Department Sex Crimes Unit, who testified that he spoke with S.L. one to two times but never talked to J.L.; Mindy Song, the petitioner's twelve-year-old daughter, who testified that she could not recall the petitioner's ever telling her and J.L. to play outside by themselves, leaving the petitioner alone with S.L. in the house; and the petitioner, who denied the charges and claimed that the victims were lying. Id. at *1-5.

The petitioner filed a timely *pro se* petition for post-conviction relief in 2006 in which he raised a number of issues, including ineffective assistance of counsel. Post-conviction counsel was appointed and an amended petition filed on October 19, 2006. Although the petitioner alleged numerous instances of ineffective assistance of counsel in his original and amended petitions, he confines himself on appeal to arguing that counsel was ineffective for failing to object to inadmissible hearsay; failing to present an alibi defense and to request that the jury be instructed on alibi; failing to retain an interpreter for trial; failing to communicate the State's plea bargain offer to the petitioner; failing to request a jury instruction on the lesser-included offense of child abuse; and failing to seek a severance of the offenses involving different victims.

At the January 5, 2007, evidentiary hearing, trial counsel testified that he had been practicing law for twenty years and that ninety-five percent of his practice consisted of criminal defense. He said that he met with the petitioner several times to discuss the case, both when the petitioner was in jail and later in his office after the petitioner had made bond. Following discussions with the petitioner, who was adamant that he was not guilty, trial counsel's main theory of defense focused on an attempt to discredit the victims and to show their possible motives for lying. He stated that his independent medical expert determined from his review of S.L.'s medical records that her injury was consistent with her allegations of rape. There was not, however, any physical evidence linking the petitioner to the rape:

> I mean, because, when it came down to it, it was really a credibility issue. The physical evidence did not implicate [the petitioner] specifically.
>
> There were – as I suppose everyone recalls, there was some physical evidence, although it did not implicate [the petitioner]. It was just injury to the child, but nothing specifically showing [the petitioner] did it.

There was no statement or confession by [the petitioner], no witnesses other than the accusers; and, so, basically in my opinion it came down to credibility, except for the – the injury. So, we did explore that.

Trial counsel testified that he and the petitioner explored an alibi defense, discussing how the petitioner had moved out of town before at least one of the incidents allegedly occurred. He explained, however, that the long time span alleged in the indictment prevented him from making any serious attempt to present an alibi defense: "[T]he problem with an alibi defense . . . is, because of the broad time frame, if I recall correctly, he was out [of] town for a part [of] that time frame but not the entire time frame. So, I . . . just did not see an alibi defense being very viable." Trial counsel recalled that the petitioner testified on direct examination as to the date that he had moved out of town and vaguely recalled having addressed those time discrepancies during closing argument. He also recalled that S.L. alleged that at least one of the incidents had occurred when the petitioner returned to town for a visit. He said that his primary reason for not filing a motion to sever the offenses was that, given the close relationship between the victims, he did not believe the trial court would grant the motion. In addition, in some cases he thought it best to try to defend everything at one trial rather than to give the State "two shots at [his] client."

Trial counsel testified that he filed a motion for an interpreter to be provided at State's expense because, although he and the petitioner were able to communicate effectively with each other in a casual office setting, he worried that the leading and argumentative questions posed on cross-examination might present difficulties for his client. Trial counsel conceded that he may have told the trial court at the hearing on his motion for appointment of an interpreter that the petitioner spoke "very good English." He said it was not unusual for him to have to restate something two or three times before the petitioner understood what he was asking, but he always understood the English the petitioner used in reply. As he recalled, the petitioner "just kinda (sic) went along with the program" when he informed him that he would be requesting an interpreter; he had no memory of the petitioner's either asking or instructing him to hire one. He also had no recollection of the petitioner's having informed him that he had sufficient funds to pay for an interpreter, but said that he had no doubt the petitioner might have done so. Although it was obvious to him that the petitioner's family did not have much money and, as he recalled, had to borrow funds to pay for his defense, the petitioner always agreed when he told him he needed additional funds for an aspect of the defense. The fact that the funds were usually slow in coming, however, reinforced his opinion that the petitioner did not have a lot of money at his disposal. Trial counsel testified that the petitioner "did well enough on direct examination" but presented himself poorly on cross-examination, which made counsel regret his decision not to hire an interpreter.

Trial counsel vaguely recalled having a conversation with the prosecutor about a possible plea bargain. He said that the State wanted "some significant prison time" and that the petitioner was not interested when he communicated the offer to him. He stated that he sent his investigator to the victims' home in an attempt to interview them, but their mother would not allow it. He also considered hiring an expert to review the forensic interviews of the victims but ultimately decided that it was not worth the expenditure of funds because he thought that in most cases the jury is able

-3-

to determine for itself "whether questions are inappropriate, leading, those types of things." Trial counsel acknowledged that he introduced the tape of S.L.'s forensic interview as an exhibit at trial and did not object when the State later moved to publish it to the jury. He explained that he wanted the jury to see S.L.'s demeanor at the conclusion of the interview, which, in his opinion, was at odds with the traumatic events she had just recounted:

> Well, I remember being very impressed -- I [want to] say "impressed, not in a positive way" -- that, at the very end of the tape, after [S.L.] had told about all these traumatic things, her attitude to me seemed very cavalier, seemed very casual.

> She gets on her cell phone, is chitchatting with a girlfriend, or something of that nature. And I wanted the Jury to see that, because in . . . my opinion I thought the Jury might agree with me, that, if she -- if all these things had really happened and they were something that should've been very traumatic, that just her demeanor did not fit with having to just recount something like that.

> So, I knew that I was going to -- at one point I was going to show that part to the Jury. I knew that, if I did that, that in all likelihood the State would be able to show the entire tape, to show the interview in its entirety; and . . . I was not [going to] be able to just select the portions out of it that I wanted.

> So, I mean, I was . . . always conflicted about that; and I think that's why, when the Judge asked me, I said, "Well, I don't know," 'cause I was just still trying to decide whether that was the best thing to do.

> But ultimately I knew that I was going to play that part; and I knew ultimately it was going to come in, if I did that. And that's how we got to where we are.

Trial counsel testified that he did not review the most recent case law on lesser-included offenses of rape of a child and was, therefore, unaware that child abuse was a lesser-included offense in the case. He said that he made a tactical decision, albeit perhaps a poor one, not to object to the hearsay testimony of the various State witnesses because he was attempting to impeach S.L.'s trial testimony with the statements she had made to those witnesses.

On cross-examination, trial counsel acknowledged that his attempt to show inconsistencies between S.L.'s trial testimony and her prior statements about the abuse was part of his overall defense strategy, which focused on discrediting the victim. He also agreed that Dr. Sanger's testimony would have been admissible under the medical diagnosis or treatment exception to the rule against hearsay. He said that he regretted his decision to introduce the tape of S.L.'s forensic interview, which he characterized as a "really bad call," but said that it was part of his trial strategy at the time. Trial counsel testified that the petitioner communicated with him during trial about various witnesses' testimony and, at one point when the victims' mother was testifying, informed him that the interpreter had not rendered a correct translation. He acknowledged that child abuse as a lesser-included offense

-4-

would have applied to only one count of the indictment, based on an incident in which the victim testified that penetration had resulted in bleeding. Trial counsel denied that he dissuaded the petitioner from accepting a plea or guaranteed that he would win the case, testifying that he told the petitioner that he felt that they had a "decent shot but certainly no guarantees, and that [the petitioner] had a lot of exposure." He said that the petitioner was "adamant from the beginning that he wasn't going to enter a plea."

The petitioner, using a mixture of English and Korean and sometimes speaking simultaneously in English with the interpreter provided for his assistance at the hearing, testified that he had been in the United States for about ten years. He said he spoke English and Korean for the first seven or eight years and in the last two years spoke only English. He later testified, however, that he spoke exclusively Korean at home and in the sermons he delivered at his church. He said he had taught himself to speak English through books, but it was a very difficult language and he expressed himself much better in Korean, particularly in stressful places such as the courtroom. For that reason, he requested that trial counsel provide an interpreter at trial, telling him that he would pay for one himself. Asked whether he would have had funds for an interpreter at that time, the petitioner testified that he informed trial counsel of five different individuals who had offered to translate for him without pay and requested that he choose one of those five to act as his interpreter at trial.

The petitioner testified that he gave counsel a copy of his rental contract showing that he had moved from Nashville to his Alabama apartment in February 2001 which, according to his post-conviction counsel, would have provided an alibi for count seven of the indictment. The post-conviction court noted, however, that the petitioner had testified to the same information at trial.

The petitioner testified that trial counsel told him not to worry about the case and reassured him that he would be going home after trial. He said that trial counsel did not tell him anything about the State's plea offer until it was too late, giving him no chance to consider whether he wanted to take it. On cross-examination, he acknowledged that he had handwritten his seventy-six-page *pro se* petition for post-conviction relief in English but said that he had received assistance from an American who told him how to write it. He admitted that he had read the trial transcript in English before preparing the petition. Finally, he testified that if trial counsel had let him know prior to trial that his "color" would prevent him from receiving a fair trial, he would have entered a nolo contendere plea in the case.

On January 23, 2007, the post-conviction court entered a detailed written order denying the petition. Among other things, the court accredited the testimony of trial counsel over that of the petitioner with respect to whether trial counsel communicated the plea offer to the petitioner and whether the petitioner requested that counsel provide an interpreter at trial. The court found that trial counsel's decisions to introduce the victim's interview tape, not to pursue an alibi defense, not to object to hearsay testimony of the various State witnesses, and not to file a motion for severance of offenses constituted legitimate trial tactics and strategy. The court also found that the petitioner failed to show that counsel was deficient for failing to request a jury instruction on child abuse as a lesser-included offense because the evidence did not support such a charge. The court further found that,

even if counsel was deficient for not requesting the charge, the petitioner failed to show that he suffered any prejudice as a result because he was convicted of the indicted offense to the exclusion of the immediately lesser-included offenses with which the jury was charged. Accordingly, the court concluded that the petitioner failed to meet his burden of demonstrating he was entitled to post-conviction relief on the basis of any of his allegations of ineffective assistance of counsel.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S.

at 688, 104 S. Ct. at 2065; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

## III.  Claims of Ineffective Assistance

### A.  Failure to Object to Inadmissible Hearsay

The petitioner first contends that trial counsel was deficient for failing to object to the inadmissible hearsay testimony of Brenda Griffith, Dr. Angela Carr, Dr. Maureen Sanger, and Edward Stotts, thereby prejudicing the outcome of his case.  He complains that trial counsel not only failed to object to the testimony of these witnesses but also solicited some of the testimony during his cross-examination.

The post-conviction court made the following findings of fact and conclusions of law with respect to this claim:

> [The petitioner] specifically alleges the testimony of Brenda Griffith, Dr. Angela Carr, Dr. Maureen Sanger, and Edward Stotts should not have been admitted under the "fresh complaint" exception to the hearsay rule.  Trial counsel testified he did not object to the admission of this evidence because he was attempting to discredit or impeach S.L.'s credibility and wanted the Jury to hear the inconsistent portions to better analyze the issue.  He acknowledged it could have been a mistake, but it was a strategic decision.
>
> The Court accredits the testimony of trial counsel as to his decisions at trial to use this information to impeach the victim.  Further, the Court finds the testimony of Dr. Sanger would have been admissible under the medical diagnosis and treatment exception to the hearsay rule.  Tenn. R. Evid. 803(4).  Additionally, the testimony from Ed Stotts only corroborated that already given by Dr. Sanger.  Furthermore, as elaborated on above, the Court instructed the jury as to the use of impeachment testimony.  The Petitioner cannot second guess the tactical decisions of trial counsel, therefore the Court does not find fault for this choice.  The petitioner has failed to carry his burden by clear and convincing evidence in accordance with *Strickland*, *supra* and the issue is without merit.

The record fully supports the findings and conclusions of the post-conviction court.  Trial counsel explained at the evidentiary hearing that his defense strategy consisted of trying to discredit the victims and to show that they had a motive for lying.  To accomplish that goal, he made the strategic decision not to object to the hearsay testimony with respect to S.L.'s prior statements, but instead to attempt to highlight the discrepancies between those prior statements and her trial testimony. As the post-conviction court observed, a reviewing court must indulge a strong

presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, the fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### B. Failure to Present Alibi Defense or Request Instruction on Alibi

The petitioner next contends that trial counsel was deficient for failing to present an alibi defense or request that the trial court instruct the jury on alibi. He acknowledges that proof that he moved to Alabama to attend Bible college in February 2001 would not have provided an alibi for all the charges but asserts that it would have been relevant to count four, for which he was convicted of rape of a child and received a twenty-year sentence to be served consecutively to his sentences for two other counts of the indictment. The State argues that trial counsel adequately explained his reasoning for not pursuing the alibi defense and that an instruction on alibi was not warranted by the proof presented at trial. We agree with the State.

The post-conviction court made the following findings and conclusions with respect to this claim:

> As to the second issue, the Petitioner alleges his Trial Counsel was ineffective in failing to challenge the time frame of the evidence and properly present his alibi. The Court accredits the testimony of trial counsel that he discussed the issues with the Petitioner and proceeded on the issue during the Petitioner's direct examination. The Petitioner cannot in hindsight second guess the tactical decisions of trial counsel. The Court notes the time frame the Petitioner alleges did not apply to all of the charges and the jury was able to hear his testimony he lived in another state for a portion of the indictment time period and heard proof about his rented apartment, therefore the Court finds that the petitioner has failed to establish by clear and convincing proof the merits of this issue.

> As to his third issue, Petitioner alleges trial counsel was ineffective for failing to request a jury instruction as to his alibi defense. The Petitioner did not present an alibi defense at trial and neither did he offer alibi witnesses nor any other proof different than that presented at trial during the hearing on this petition. Therefore, the Petitioner has failed to prove this allegation.

The record again supports the findings and conclusions of the post-conviction court. The trial court must instruct the jury on the defense of alibi when it is "fairly raised" by the evidence, see Manning v. State, 500 S.W.2d 913, 915 (Tenn. 1973), regardless of whether the defendant requests the instruction. See Poe v. State, 370 S.W.2d 488, 491 (Tenn. 1963). Proof of an alibi sufficient to

-8-

require an instruction exists where (1) the defendant's claim that he was not at the scene of the crime is corroborated by other credible witnesses; (2) the victim has been unable to identify the defendant; or (3) the proof against the defendant is wholly circumstantial. Manning, 500 S.W.2d at 916. The failure to charge the jury with alibi when it has been fairly raised by credible evidence is reversible error. Moffitt v. State, 29 S.W.3d 51, 57 (Tenn. Crim. App. 1999).

Trial counsel explained that, due to the long time frame covered in the indictment, he considered but rejected pursuing an alibi defense. He also recalled that there was evidence that at least one of the offenses occurred when the petitioner returned to the victims' home for a visit. As the State points out, the victim's testimony with respect to count four of the indictment, that the defendant raped her on a night when she did not have to attend school the next morning, indicates that the rape occurred on a Friday or Saturday night. Given testimony by the victims and their mother that the petitioner returned for visits following his move to Alabama, the fact that the petitioner rented an apartment in Alabama in February 2001 would not be sufficient to establish an alibi or justify an alibi instruction to the jury. We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of this claim.

## C. Failure to Retain an Interpreter

The petitioner next contends that trial counsel was ineffective for failing to retain an interpreter. Asserting that he informed counsel that he needed, wanted, and was able to pay for the services of an interpreter, the petitioner argues that trial counsel was deficient for failing to hire an interpreter to assist his trial testimony and that such deficiency prejudiced the outcome of his case. The petitioner contends that trial counsel "misrepresented the facts" by informing the trial court that the petitioner was able to speak "very good English," as evidenced by the numerous citations to the petitioner's confusing trial testimony that counsel included in his appellate brief when raising the trial court's denial of his motion for an interpreter as an issue on direct appeal.

Trial counsel's testimony, however, which was specifically accredited by the post-conviction court, established that the petitioner neither asked nor demanded that he provide an interpreter at trial. In addition, the petitioner's own evidentiary hearing testimony is somewhat equivocal on whether he ever informed trial counsel that he would pay for an interpreter. The petitioner first testified that he told trial counsel that he would pay for an interpreter but then stated he told trial counsel that he knew five individuals who were willing to interpret for free and counsel should chose an interpreter from that group. We also note that the petitioner, provided with the services of an interpreter at the evidentiary hearing, chose to deliver much of his testimony in English. Furthermore, the petitioner's command of the English language appeared at that hearing to be at least as good, if not better, than that of his interpreter. The petitioner, for example, corrected the interpreter with the correct words when the interpreter began to refer to the public defender as the "public depender," or "public retorney," and exhibited a fairly good grasp of English grammar and word order. The petitioner has not, therefore, met his burden of showing that trial counsel was deficient for failing to hire an interpreter or that he was prejudiced as a result of that alleged deficiency. The petitioner is not entitled to post-conviction relief on the basis of this claim.

### D.  Failure to Communicate Plea Bargain

The petitioner next contends that trial counsel was deficient for failing to communicate the State's plea bargain offer to him.  He asserts that trial counsel failed to communicate the plea bargain offer until it was too late for him to accept it and had counsel made him aware that he would not be able to receive a fair trial, he would have entered a nolo contendere plea to the charges.

The post-conviction court made the following findings of fact and conclusions of law with respect to this claim:

> In his sixth issue, the Petitioner alleges his counsel failed to discuss with him offers resulting from plea negotiations.  The Court does not find the Petitioner's testimony to be credible but rather accredits the testimony of his trial counsel that the Petitioner would not have pled to an offer and moreover that he was only offered to plea to the charges.  The Petitioner acknowledged that he would not have admitted guilt at a plea hearing.  Further, the Petitioner's testimony is suspicious because he acknowledges "plea bargaining" with [trial counsel], but also alleged he received no plea offer.  Therefore, the Petitioner has failed to prove the allegation by clear and convincing evidence in accordance with *Strickland*, *supra* and the issue is without merit.

We, again, conclude that the record supports the findings and conclusions of the post-conviction court.  Trial counsel testified that the petitioner was adamant that he was not guilty and rejected the only plea offered by the State, which involved substantial prison time.  In response to questioning by the post-conviction court, the petitioner did not say that he would have been willing to admit his guilt to the crimes.  Instead, he testified that he had since learned from his fellow inmates that his skin color prevented him from receiving a fair trial and that, had trial counsel informed him of that fact, he would have chosen to enter a nolo contendere plea.  The petitioner has not, therefore, shown that trial counsel was deficient for failing to communicate a plea offer to him or that he suffered any prejudice as a result.  As such, he is not entitled to post-conviction relief on the basis of this claim.

### E.  Failure to Request Jury Instructions on Child Abuse

The petitioner next contends that trial counsel was ineffective for failing to request a jury instruction on child abuse as a lesser-included offense of child rape.  With respect to this claim, the post-conviction court found that the evidence did not support an instruction on child abuse and that trial counsel, therefore, was not deficient for failing to request the charge.  The court further found that, even if counsel were deficient for failing to request the charge, the petitioner was unable to show prejudice, as the jury convicted him of the indicted offense of child rape to the exclusion of the lesser-included offenses of attempted rape of a child, aggravated sexual battery, attempted aggravated sexual battery, and assault, which the jury was instructed to consider sequentially.

-10-

We agree that, even if trial counsel was deficient for failing to request the charge, the petitioner has not shown that he was prejudiced as a result. Under State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998), any error in not charging the jury on a lesser-included offense is harmless when the jury convicts a defendant of the indicted offense to the exclusion of the immediately lesser-included offenses with which it was charged. Accordingly, the petitioner has not met his burden of showing that he is entitled to post-conviction relief on the basis of this claim.

### F. Failure to Move for Severance of Offenses

Lastly, the petitioner contends that trial counsel was ineffective for failing to move to sever the offense involving J.L. from the offenses involving her older sister, S.L. The post-conviction court found, however, that trial counsel's decision not to pursue a severance of offenses was a sound tactical decision, which was not to be second-guessed by the court. The record supports this finding. Accordingly, we conclude that the petitioner is not entitled to post-conviction relief on the basis of this claim.

### CONCLUSION

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE

-11-